William B. WOLF, Jr., Appellant,

v.

William A. REGARDIE, et al., Appellees.

No. 87–751.

District of Columbia Court of Appeals.

Argued Nov. 8, 1988.
Decided Jan. 27, 1989.

M. Paul Zimmerman, Washington, D.C., for appellant.

Edward L. Weidenfeld, Washington, D.C., for appellees.

Before MACK and TERRY, Associates Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Appellant, William Wolf, brought suit for invasion of privacy in the Superior Court,

alleging intrusion upon seclusion (Counts I and II of his complaint) and publicity given to private life (Counts III and IV), stemming from two articles published in a local magazine containing brief entries about him and his various business ventures.[1] This is an appeal from the trial court's order granting appellees' motion for summary judgment and dismissing appellant's complaint.

In granting the motion, the trial court noted that, with the exception of a few minor portions, appellant agreed to appellees' Statement of Material Facts Not in Dispute; that appellant "misconceive[d] the protectable nature of the privacy and seclusion that he claims [have] been invaded" because the published information was garnered from third parties and public records; and that he was therefore not entitled to judgment on the two "intrusion upon seclusion" counts. In addition, the court held that the matters publicized about appellant were not private ones, they would not be highly offensive to a reasonable person, and they were of legitimate concern to the public; and therefore appellant was not entitled to judgment on the two "publicity given to private life" counts. We affirm.

I

Reviewing the facts in this case in the light most favorable to appellant,[2] the record shows that in July, 1985, a secretary in his law office informed him that a Vanessa Grimm had telephoned and indicated a desire to interview him for inclusion in an article in *Regardie's,* a monthly informational magazine similar in format to *Forbes* dealing with matters of interest to the local business community, about "prominent and wealthy Washington real estate developers." He declined to return Grimm's calls, but finally spoke with her in early August in the hope that he could forestall his possible inclusion in the article. He refused to give Grimm any details regarding his real estate or other financial

activities, stating simply that he "practice[s] law 24 hours a day, seven days a week." He ended the conversation by reiterating his desire that he not be included in the article. Grimm indicated that decision would be made by her editors.

The September 1985 issue of *Regardie's* contained an articled entitled "The *Regardie's* 100," assertedly a list of Washington's 100 wealthiest individuals, each identified by a short biographical entry. The entrants were divided into categories based on estimated net worth, and following the rubric "$20 million to $30 million" appeared this entry:

WILLIAM B. WOLF

Real estate investment

"I practice law 24 hours a day, seven days a week," says Wolf, dismissing any ties with local developers and real estate investors. Yet he has been a partner of Mel Lenkin's ... in a number of real estate projects. He and Lenkin bought 41 percent of National Security [sic] Bank from banker Leo Bernstein.... Of the more than 350,000 shares that the pair bought, some 100,000 are in Wolf's name. The husband of literary agent Audrey Adler Wolf, he owns the building that houses their offices at 1001 Connecticut Avenue. With Lenkin, he owns the building at 1900 M Street as well as the building at the corner of I Street and Connecticut Avenue.

"In the course of my practice in law," he says, "I have gotten involved in real estate slightly." He is quick to say, however, that his name on a list of wealthy Washingtonians had to be a "big mistake," since he says he has not been directly involved in the "dramatic and wonderful transformation of the city." He adds, "I'm just a lawyer, one among many lawyers."

The facts would seem to indicate that when it comes to wealth, he's a little more than that....

1. Counts I and III stemmed from a 1985 publication of the magazine, while II and IV were grounded in a 1986 publication on the same topic.

2. *See, e.g., Leichtman v. Koons,* 527 A.2d 745, 746 (D.C.1987); *Taylor v. Eureka Investment Corp.,* 482 A.2d 354, 357 (D.C.1984).

According to Wolf, he gave serious consideration to letting *Regardie's* "know of his pain and resentment" over being included in the article, and even contemplated initiating legal action. He thought it best, though, to refrain from pursuing the matter so as to avoid further publicity.

One year later, however, the September 1986 issue of *Regardie's* included an article entitled "The Second Annual *Regardie's* 100." While similar in nature to the 1985 version, in the 1986 edition *Regardie's* raised the minimum estimated net worth required for inclusion in the *"Regardie's* 100" from $20 million to $30 million dollars. Consequently, under the epigraph "GONE BUT NOT FORGOTTEN" and the subheading "BUMPED" appeared the following:

> WILLIAM B. WOLF. He says he practices law "24 hours a day, seven days a week," but he has found the time to enter into real estate and business ventures with Mel Lenkin ... buying into Security National Bank and a few office buildings, including 1001 Connecticut Avenue and 1900 M Street.

Appellant brought suit alleging that the research done by the *Regardie's* staff in preparing the articles "intentionally and maliciously intruded on [his] private affairs and concerns ... in willful disregard for [his] rights to privacy, seclusion, and to be let alone." After protracted discovery, appellees moved for summary judgment. The trial court granted the motion on April 30, 1987. This appeal followed.

## II

In reviewing the propriety of an order granting a motion for summary judgment, we embark upon an independent examination of the record. *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983). Consequently, our standard of review is identical to the trial court's standard for initially considering the motion: summary judgment is properly entered if there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); Super.Ct. Civ.R. 56(c).[3]

It falls to the movant first to demonstrate the absence of any factual issue from which the jury could find for the nonmoving party. *Nader, supra,* 408 A.2d at 42. However, the nonmoving party has a concomitant duty, in responding to the motion, to "set forth specific facts showing that there is a genuine issue for trial." Super.Ct.Civ.R. 56(e). In response to appellees' motion for summary judgment, appellant filed a "Statement of Material Facts as to Which Exist Genuine Issues to Be Litigated." Presumably he sought to oppose appellees' motion "by alleging the existence of a material factual dispute for trial." *Williams v. Gerstenfeld,* 514 A.2d 1172, 1176 (D.C.1986). In our review of the record, however, we discern no disputed issue of material fact.[4] We thus turn to examine the only remaining issue—whether there exists a legal theory entitling appellant to judgment. *See Williams, supra,* 514 A.2d at 1177; *Nader, supra,* 408 A.2d at 42.

## III

■ Invasion of privacy is not one tort, but a complex of four, each with distinct

---

**3.** *See Sledd v. WMATA,* 439 A.2d 464, 468 (D.C. 1981) (court of appeals' function is to determine whether any material, factual issue exists); *Tompkins v. Washington Hospital Center,* 433 A.2d 1093, 1098–99 (D.C.1981) (court must determine whether prevailing party legally entitled to judgment).

**4.** It appears that the majority of appellant's "disputed facts," *e.g.,* Issue 10 ("Have defendants intruded upon plaintiff's private affairs and concerns?"), Issue 13 ("Does this intrusion constitute a deprivation of plaintiff's seclusion and an invasion of privacy?"), Issue 20 ("Have defendants given publicity to matters concerning the private life of plaintiff?"), Issue 28 ("Is plaintiff entitled to recover compensatory damages for this publicization [sic]?"), are not material facts at all, but simply frame the ultimate legal issues to be decided in the case. *See Williams, supra,* 514 A.2d at 1177; *Dillard v. Travelers Ins. Co.,* 298 A.2d 222, 223–24 (D.C.1972) (assertion by way of legal conclusion without supporting factual assertion insufficient to allege existence of material fact).

elements and each describing a separate interest capable of being invaded.[5] The four constituent torts are (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit. *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 587 (D.C.1985); *see* RESTATEMENT, *supra* note 5, § 652A.[6] Appellant contends only that the two *Regardie's* publications intruded upon his seclusion and gave publicity to his private life. Consequently, we restrict our discussion to these two issues.

### A.

■ The foundation upon which appellant has built his assertion that *Regardie's* intruded upon his seclusion is the RESTATEMENT, *supra* note 5, § 652B, which states:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*See* W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 117, at 854–56 (5th ed. 1984); *see generally* Comment, *The Emerging Tort of Intrusion*, 55 IOWA L.REV. 718 (1970). The tort of intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination, *see* RESTATEMENT, *supra* note 5, § 652B, comment (b); (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns, *see id.; Corcoran v. South-*

*western Bell Telephone Co.*, 572 S.W.2d 212, 214–15 (Mo.Ct.App.1978); *Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me. 1977); (3) that would be highly offensive to an ordinary, reasonable person, *see DeAngelo v. Fortney*, 357 Pa.Super. 127, 130, 515 A.2d 594, 595 (1986); RESTATEMENT, *supra* note 5, § 652B, comment (d). Unlike some other types of invasion of privacy, intrusion does not require as an essential element the publication of the information obtained, RESTATEMENT, *supra* note 5, § 652B, comment (a), *see Pearson v. Dodd*, 133 U.S.App.D.C. 279, 282, 410 F.2d 701, 704, *cert. denied*, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir.1965); nor does the subject matter of that information necessarily control when fixing liability, *Pearson, supra*, 133 U.S.App.D.C. at 283, 410 F.2d at 705. In fact, the acquisition of information is not a requisite element of a § 652B cause of action. *See Phillips v. Smalley Maintenance Services, Inc.*, 435 So.2d 705, 709 (Ala.1983). Rather, it is the nature of the intrusion which initially fixes liability.[7] Mindful of these principles, we turn to apply them to the present case.

■ First, appellant has misconceived the kind of invasion that this cause of action seeks to redress. The types of invasion intrinsic in the tort of intrusion upon seclusion are those such as harassment, *Galella v. Onassis*, 353 F.Supp. 196 (S.D.N. Y.1972), *aff'd in part and rev'd in part*, 487 F.2d 986 (2d Cir.1973); peeping through windows or into other locations in which a plaintiff has chosen to seclude himself, *Alabama Electric Cooperative, Inc. v. Partridge*, 284 Ala. 442, 444–45, 225

---

**5.** Despite these differences, because "each involves interference with the interest of the individual in leading ... a secluded and private life," *see Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1088 (5th Cir.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985), the four share many of the same elements, *compare* RESTATEMENT OF TORTS (SECOND) § 652B (1977) [hereinafter RESTATEMENT] *with id.* § 652D.

**6.** For a list of the jurisdictions recognizing these torts, see *Lawrence v. A.S. Abell Co.*, 299 Md. 697, 700–01 n. 1, 475 A.2d 448, 450 n. 1 (1984),

and *Crump v. Beckley Newspapers, Inc.*, 320 S.E. 2d 70, 84 (W.Va.1983) and the authorities cited therein.

**7.** The First Amendment does not shield a media defendant from liability for this tort. *See Galella v. Onassis*, 487 F.2d 986, 995–96 (2d Cir.1973); *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir.1971); *cf. Le Mistral, Inc. v. CBS, Inc.*, 61 A.D.2d 491, 493–94, 402 N.Y.S.2d 815, 817 (1st Dept.1978) (First Amendment does not shield press from liability for trespass).

So.2d 848, 850–51 (1969); *New Summit Associates Ltd. Partnership v. Nistle,* 73 Md.App. 351, 358–59, 533 A.2d 1350, 1353–54 (1987); opening personal mail, *Birnbaum v. United States,* 436 F.Supp. 967, 976–77 (E.D.N.Y.1977), *aff'd in part and rev'd in part,* 588 F.2d 319 (2d Cir.1978); eavesdropping on private conversations, *Nader v. General Motors Corp.,* 25 N.Y.2d 560, 564, 255 N.E.2d 765, 767, 307 N.Y.S.2d 647, 650 (1970); entering a plaintiff's home without permission or searching his or her belongings, *Gonzales v. Southwestern Bell Telephone Co.,* 555 S.W.2d 219, 220–22 (Tex.Civ.App.1977); examining a plaintiff's private bank account, *Zimmermann v. Wilson,* 81 F.2d 847, 847–49 (3d Cir.1936); or other invasions of that nature. *See Moore v. R.Z. Sims Chevrolet–Subaru, Inc.,* 241 Kan. 542, 547–49, 738 P.2d 852, 857 (1987); W. KEETON, *supra,* § 117, at 854–56; RESTATEMENT, *supra* note 5, § 652B. This tort was not created to protect against the invasions alleged in this case—the garnering of information from third parties, and the culling of facts from public records. Gathering information about appellant from third parties, "even if pursued using subterfuge and fraud, cannot constitute ... an intrusion upon [*appellant's*] solitude or seclusion. The Court has found no authority, nor has [appellant] cited any, which suggests the contrary." *Rifkin v. Esquire Publishing,* 8 MEDIA L.RPTR. (BNA) 1384, 1386 (C.D.Cal.1982) (U.S. District Court); *accord, Rogers v.*

*IBM Corp.,* 500 F.Supp. 867, 870 (W.D.Pa. 1980); *MacKerron v. Madura,* 445 A.2d 680, 682 (Me.1982); *see also Munley v. ISC Financial House, Inc.,* 584 P.2d 1336, 1338–40 (Okla.1978).[8] Similarly, it is hardly persuasive to argue that appellant's seclusion is somehow intruded upon by a person's consultation of public records concerning him. Finally, appellant's phone conversation with a *Regardie's* reporter, a colloquy in which he voluntarily participated, could hardly be considered intrusive. *See Jenkins v. Dell Publishing Co.,* 143 F.Supp. 952, 955 (W.D.Pa.1956), *aff'd,* 251 F.2d 447 (3d Cir.), *cert. denied,* 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958); *Intrusion, supra,* 55 IOWA L.REV. at 720 n. 30 (collecting cases). We thus fail to see any cognizable intrusion upon appellant's seclusion.

■ Moreover, even assuming an intrusion, where the defendant did not actually delve into a plaintiff's *private* concerns, or where the plaintiff's activities were already known or public, there can be no liability. *See Dresbach v. Doubleday & Co.,* 518 F.Supp. 1285, 1287, 1290 (D.D.C. 1981); *Bisbee v. John C. Conover Agency, Inc.,* 186 N.J.Super. 335, 340, 452 A.2d 689, 691 (1982); W. PROSSER, HANDBOOK ON THE LAW OF TORTS § 117, at 808–09 (4th ed. 1971). Such is the case here. Each fact in the two articles is a matter of public record or knowledge readily available to anyone who would wish to ascertain it,[9] and nei-

---

8. Appellant here contends that it was error for the trial court to grant summary judgment while he had pending discovery requests for the identities of the third-party sources consulted for the articles. We disagree. Because contacting third parties does not constitute an intrusion upon appellant's seclusion, the identities of these third parties are, in this respect, irrelevant. *See Munley, supra.* As the court below stated in its order granting summary judgment: "Discovery to learn which persons [appellees] talked to or the content of those conversations will not cure the fact that [appellant] can point to no such legally protectable invasion or intrusion upon his own person."

9. For example, appellant's involvement in a business partnership with Mel Lenkin is noted in a myriad of court and other documents. *See, e.g.,* Complaint at 1, *Sherman, Fox, Meehan & Curtin v. Lenkin,* Civil Action No. 6701–80 (D.C.

Super.Ct.1980) (Lenkin and Wolf are "general partners of the Lenkin–Wolf Limited Partnership"); Complaint at 1, *Wolf v. Bobys,* Civil Action No. 6709–78 (D.C.Super.Ct.1978). His participation in the purchase of Security National Bank and his position with that institution are noted in several documents issued by the bank, *see, e.g.,* Proxy Statement, Security National Corp., Mar. 26, 1985, at 5 (listing appellant as Vice Chairman of Board of Directors); filed with federal agencies, *see, e.g.,* SEC Schedule 13D for Leo Bernstein, at 3–4 & Exhibit A (filed July 6, 1984); and published in articles in local newspapers, *see, e.g.,* Washington Post, Oct. 27, 1984, at G1 (appellant named Vice Chairman of bank and bank holding company); Washington Post, July 10, 1984, at D9 (controlling interest in bank sold "to lawyer William B. Wolf, Jr. and ... Melvin Lenkin, Wolf said yesterday"). Finally, the information regarding the three buildings of which appellant is either

ther those facts obtained from the examination of accessible public records,[10] *see Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 494–95 & n. 25, 95 S.Ct. 1029, 1046 & n. 25, 43 L.Ed.2d 328 (1975); *Huskey v. National Broadcasting Co.,* 632 F.Supp. 1282, 1286 (N.D.Ill.1986), nor matters already publicly released in a periodical or newspaper of local or regional circulation, *Sipple v. Chronicle Publishing Co.,* 154 Cal.App.3d 1040, 1047, 201 Cal.Rptr. 665, 668–69 (1st Dist.1984) (citing *Sperry Rand Corp. v. Hill,* 356 F.2d 181, 185 (1st Cir.), *cert. denied,* 384 U.S. 973, 86 S.Ct. 1859, 16 L.Ed.2d 683 (1966)), correctly can be considered private. Furthermore, the facts surrounding appellant's involvement in a partnership and the activities of that partnership are not private. *See Hollander v. Lubow,* 277 Md. 47, 61, 351 A.2d 421, 427–28 ("every time a partner transacts any business on behalf of a partnership, every time he signs a check for the partnership or incurs an obligation for the partnership ... there is public disclosure of the fact that such person is a partner"), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed. 2d 388 (1976).[11] Hence, the trial court properly concluded that appellant failed to establish the second element of the tort.

Finally, the third requisite for establishment of liability is that the interference with the plaintiff's seclusion must be substantial and highly offensive to the ordinary, reasonable person. *See Brown v. American Broadcasting Co.,* 704 F.2d 1296, 1302 (4th Cir.1983) (citing *Bernstein v. National Broadcasting Co.,* 129 F.Supp. 817, 825 (D.D.C.1955), *aff'd,* 98 U.S.App. D.C. 112, 232 F.2d 369, *cert. denied,* 352 U.S. 945, 77 S.Ct. 267, 1 L.Ed.2d 239 (1956)) (plaintiff must show emotional distress and embarrassment); RESTATEMENT, *supra* note 5, § 652B, comment (d). We agree with the trial court that appellees' information gathering was not offensive in that sense. While determining offensiveness in an invasion of privacy case is usually the province of the jury, *see Vassiliades, supra,* 492 A.2d at 588; *Sofka v. Thal,* 662 S.W.2d 502, 511 (Mo.1984) (en banc), the trial court must make a threshold determination of offensiveness in discerning the existence of a cause of action for intrusion, *see Miller v. National Broadcasting Co.,* 187 Cal.App. 3d 1463, 1483, 232 Cal.Rptr. 668, 678 (2d Dist.1986); *cf. Guam Federation of Teachers, Local 1581 v. Ysrael,* 492 F.2d 438, 441 (9th Cir.), *cert. denied,* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974) (in civil cases involving First Amendment, court must determine for itself whether evidence

---

an owner or co-owner is available through court records, *see, e.g.,* Complaint at 1, *Lenkin v. Optimum Systems, Inc.,* Civil Action No. 11930–81 (D.C.Super.Ct.1981) (1900 M Street); Complaint at 1, *Wolf v. Soon Hwan Han,* Civil Action No. 5353–82 (D.C.Super.Ct. Apr. 8, 1982) (1001 Connecticut Avenue); Complaint at 1, *Wolf v. System Design Concepts, Inc.,* Civil Action No. 3347–84 (D.C.Super.Ct. Mar. 16, 1984) (1634 I Street); or from a local real estate listing, *see generally, Lusk Listings* (R.S. Lusk, Inc. 1985).

**10.** With reference to public records, we note with approval the "open for public inspection" test for determining those records which can be considered public; *see Pemberton v. Bethlehem Steel Corp.,* 66 Md.App. 133, 166–69, 502 A.2d 1101, 1118–19, *cert. denied,* 306 Md. 289, 508 A.2d 488, *cert. denied,* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (1986); *cf.* W. PROSSER, *supra,* § 117, at 809–11; and adopt its application, subject to any relevant statutory provisions, *see, e.g.,* D.C. Code §§ 1–1521 *et seq.* (1981) (FOIA).

**11.** Appellant relies on various federal statutes, *e.g.,* the Financial Privacy Act of 1978, Pub.L.

No. 95–630, 92 Stat. 3697 (codified as amended at 12 U.S.C. § 3401 *et seq.* (1982 and Supp. IV 1986)); and cases, *e.g., United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), for the proposition that information regarding a person's finances is protected by the privacy formulation of RESTATEMENT § 652B. However, all of the statutes listed by appellant, including the Freedom of Information Act, Pub.L. No. 89–554, 80 Stat. 383 (codified as amended at 5 U.S.C. § 552 *et seq.* (1982 and Supp. IV 1986)), are applicable only to the disclosure by governmental entities of personal information in their custody, and not to the obtaining of information by private individuals from public sources. *See id.; cf.* 12 U.S.C. § 3401 *et seq., supra* (access to private financial records by government authorities). Similarly, the cases relied on by appellant are based on these same statutes, and concern the release of information not already a part of the public record. *See, e.g., Sonderegger v. United States Dep't of the Interior,* 424 F.Supp. 847, 849–56 (D.Idaho 1976) (disclosure of personal information in financial claim forms filed with government).

measures up to applicable legal standards, e.g., the *New York Times v. Sullivan* test —if it does, only then does the issue become one for the jury). In our judgment, no jury could justifiably conclude that appellees' actions in researching the two articles would offend an ordinary, reasonable person. *See Hansen v. Stoll,* 130 Ariz. 454, 460, 636 P.2d 1236, 1242 (Ct.App.1981); *compare Chicarella v. Passant,* 343 Pa.Super. 330, 339, 494 A.2d 1109, 1114 (1985) (securing plaintiff's hospital records from third party not actionable) *and Nagy v. Bell Tel. Co. of Pennsylvania,* 292 Pa.Super. 24, 27–28, 436 A.2d 701, 703 (1981) (release of telephone numbers called by plaintiff not actionable) *with Galella v. Onassis, supra,* 353 F.Supp. at 207–14 (photographer's continual physical and emotional harassment of Onassis actionable).

Hence, in the complete absence of a disclosure of private facts, activities offensive to a reasonable person, and intrusions violative of a private "zone of seclusion which society considers sacrosanct and insulated from the peering eyes and cocked ears of insensitive citizens," S. METCALF, RIGHTS AND LIABILITIES OF PUBLISHERS, BROADCASTERS AND REPORTERS § 2.09 (1985), there is no basis for assessing liability on appellees' part grounded in a cause of action for intrusion upon seclusion. Because no reasonable juror, acting reasonably, could find for appellant as a matter of law, the trial court properly granted summary judgment for appellees on Counts I and II of appellant's complaint. *See Nader, supra,* 408 A.2d at 42.

**B.**

■ ■ Appellant's second claim is based on § 652D of the RESTATEMENT:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter published is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

The tort is generally considered as having five constituent elements: (1) publicity, (2) absent any waiver or privilege, (3) given to private facts (4) in which the public has no legitimate concern (5) and which would be highly offensive to a reasonable person of ordinary sensibilities. *See Harris v. Easton Publishing Co.,* 335 Pa.Super. 141, 154, 483 A.2d 1377, 1384 (1984); *Brown v. Mullarkey,* 632 S.W.2d 507, 509 (Mo.Ct. App.1982); W. PROSSER, *supra,* § 117, at 809–12. Failure to establish any one of these elements will defeat a plaintiff's cause of action. Thus, because we conclude that appellant fails to establish the third element—that the facts published be private ones—we need not discuss the others in any detail.[12]

The right of privacy is not an absolute. While it stands on high ground, "cognate

---

12. Appellant's claim satisfies the first element, publicity, as thousands of copies of the magazines containing the articles were published and distributed. *See Harris, supra,* 335 Pa.Super. at 154–55, 483 A.2d at 1384; RESTATEMENT, *supra* note 5, § 652D, comment (a). The second element is largely inapplicable to this case. *See Crump, supra* note 6, 320 S.E.2d at 84 (consent); RESTATEMENT, *supra* note 5, §§ 652F–G (privilege).

As for the fourth element, a media defendant is protected from tort liability when its publication is "newsworthy"; that is, when it concerns facts of legitimate public interest. *See Vassiliades, supra,* 492 A.2d at 589; *Virgil v. Time, Inc.,* 527 F.2d 1122, 1128 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976); *Romaine v. Kallinger,* 109 N.J. 282, 301, 537 A.2d 284, 293–94 (1988); *see also Anderson v. Fisher Broadcasting Co.,* 300 Or. 452, 460–63, 712 P.2d 803, 808–09 (1986). Both the facts published in the two articles, and the identity of appellant as the person to whom those facts applied, are matters of legitimate interest to the citizens of the District of Columbia. *See Davis v. Forbes, Inc.,* 10 MEDIA L.RPTR. (BNA) 1272, 1274 (N.D.Tex.1983); RESTATEMENT, *supra* note 5, § 652D, comment (h). The public has a right to know who owns the buildings in which they work or transact business, and who runs the banks in which they invest their money and deposit their savings.

Finally, the fifth element requires that a reasonable person of ordinary sensibilities would find the publicity highly offensive. "Anyone who is not a hermit must accept the more or less casual observation of his neighbors and the passing public as to what he is and does, and some reporting of his daily activities." W. PROSSER, *supra,* § 117, at 811–12. The information contained in the *Regardie's* articles is not the type that would give cause to a reasonable person to feel highly offended. *See Cape Publica-*

to the values and concerns protected by constitutional guarantees," it must accommodate "the need for reasonable latitude for the selection of topics for discussion in [the media]. That right of the press, likewise supported by constitutional guarantees, is crucial to the vitality of democracy." *Afro–American Publishing Co. v. Jaffe,* 125 U.S.App.D.C. 70, 75, 366 F.2d 649, 654 (1966) (en banc). In reaching that accommodation, it is widely recognized that "the interests in privacy fade when the information [published] already appears on the public record." *Cox Broadcasting Corp., supra,* 420 U.S. at 494–95, 95 S.Ct. at 1046; *see also Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 840, 98 S.Ct. 1535, 1542, 56 L.Ed.2d 1 (1978).

■■■ This conclusion is compelled by the First Amendment. To saddle a media defendant with liability for publicizing facts garnered from public records punishes the pure expression of information—the content of speech—rather than conduct or "a combination of speech and nonspeech elements that might otherwise be open to regulation or prohibition." *Cox Broadcasting Corp., supra,* 420 U.S. at 495, 95 S.Ct. at 1046. In sharp contrast to "fighting words," which serve " 'no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality,' " *id.* (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)), the publication of truthful information already extant on the public record

is of critical importance to our type of government in which the citizenry is the

final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official [] records open to public inspection.

We are reluctant to embark on a course that would make public records generally available to the media but forbid their publication if offensive to the sensibilities of the supposed reasonable man. Such a rule would make it very difficult for the media to inform citizens about the public business and yet stay within the law. The rule would invite timidity and self-censorship and very likely lead to the suppression of many items that would otherwise be published and that should be made available to the public.

*Id.* 420 U.S. at 495–96, 95 S.Ct. at 1046–47.[13]

As we have already noted, see *supra* § III–A, none of the facts at issue in either of the *Regardie's* articles can be termed private. They appear in the court files, tax ledgers, and agency records of this City and the federal government. In this posture, we decline to make appellees' publications of public, newsworthy facts the basis for civil liability.[14] The trial court was thus correct in granting appellees' motion for summary judgment as to the remaining counts of the complaint. *See Nader, supra,* 408 A.2d at 42.

AFFIRMED.

---

tions, Inc. v. Bridges, 423 So.2d 426, 427–28 (Fla.Ct.App.1982) (protection does not extend to the hypersensitive), *petition denied,* 431 So.2d 988 (Fla.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983); *Bitsie v. Walston,* 85 N.M. 655, 657–58, 515 P.2d 659, 661–62 (collecting cases), *cert. denied,* 85 N.M. 639, 515 P.2d 643 (1973).

13. While the holding in *Cox Broadcasting Corp., supra,* was limited to court records, *id.* at 496, 95 S.Ct. at 1046–47, we can conceive of no argument preventing an application of the Court's reasoning to all public records.

14. Moreover, we note that because some of the facts in the 1985 article were previously published in a local newspaper, and because the facts in the 1986 article were taken in their entirety from the 1985 articles, they could not form a basis for liability as those facts could no longer be considered private. *See Sipple, supra,* 154 Cal.App.3d at 1047–48, 201 Cal.Rptr. at 669; *cf. Federal Deposit Ins. Corp. v. Dye,* 642 F.2d 833, 836 (5th Cir.1981) (release of public information to the same public is not actionable under the Federal Privacy Act).