**Loren KITT, Appellant,**

v.

**CAPITAL CONCERTS, INC.,**[1]
**et al., Appellees.**

No. 97–CV–780.

District of Columbia Court of Appeals.

Argued March 22, 1999.
Decided Aug. 5, 1999.

1. Capital Concerts was previously known as Pathmakers, Inc.

John W. Carr, for appellant.

Judy A. Gallant, with whom Stanley M. Brand, Washington, DC, was on the brief, for appellees.

Before FARRELL and REID, Associate Judges, and PRYOR, Senior Judge.

REID, Associate Judge:

This case concerns a lawsuit brought by the principal clarinetist of the National Symphony Orchestra ("NSO"), appellant Loren Kitt, against the company responsible for producing and promoting the 1993 Fourth of July concert at the U.S. Capitol. The concert was shown on national television. Mr. Kitt took offense at the company's use of an actor to portray a clarinetist during the production. He subsequently filed a complaint against Pathmakers, Inc., the concert's production company; Jerry Colbert, the principal owner and operator of Pathmakers; and Walter Miller, the principal director of the performance, alleging: 1) Invasion of Privacy—False Light; 2) Fraud; and 3) Intentional Infliction of Emotional Distress. The trial court dismissed the complaint for failure to state a claim upon which relief might be granted. *See* Super. Ct. Civ. R. 12(b)(6). This court reversed that judgment in *Kitt v. Pathmakers, Inc.,* 672 A.2d 76 (D.C.1996), concluding that the trial court had erred in its consideration

of factual matters outside of the complaint.[2] After remand and discovery, the trial court granted summary judgment for appellees, Pathmakers, Inc. and its principals. Capital Concerts, Inc. is Pathmakers' successor (hereinafter, we refer to Capital Concerts and its principals as "Capital Concerts"). On appeal, Mr. Kitt contends that the trial court erred in its decision because: 1) there are disputed issues of material fact; and 2) he established a prima facie case on all three counts. We affirm.

## FACTUAL SUMMARY

Capital Concerts had an agreement with NSO to promote and produce its July 4, 1993 concert. The contract granted Capital Concerts numerous rights, including "the exclusive right to record, edit, package, distribute and broadcast [the o]rchestra's performance," and the authority to use the names and likeness of its members. Mr. Kitt performs under a contract with NSO.

At a rehearsal for the concert, Capital Concerts offered Mr. Kitt the opportunity to appear in a thirty-five second camera shot ("a beauty shot") of a clarinetist playing, apart from the rest of the orchestra, on the balustrade of the Capitol during the opening of George Gershwin's "Rhapsody in Blue." Mr. Kitt, through management, rejected the offer, as well as a proposal that an actor pretend to "play" the clarinet for this camera shot. Despite assurances to the contrary and without NSO's knowledge, Capital Concerts filmed the shot with an actor during the concert. The actor, who was dressed in a top hat and a tuxedo, neither physically resembled Mr. Kitt nor played the clarinet visually in the way he did.

In its decision to grant Capital Concerts' motion for summary judgment, the trial court concluded that Mr. Kitt failed to satisfy the fourth element of a prima facie

invasion of privacy—false light claim because he could not demonstrate that "a reasonable person viewing the beauty shot would . . . find the scene offensive." The trial court determined that: (1) the actor looked like a normal person and was not engaged in obnoxious or offensive behavior; and (2) regardless of whether the actor was portraying an orchestra member or Mr. Kitt, which was unclear, a reasonable juror would not find that an ordinary viewer would be offended. With respect to the fraud count, the trial court stated that Mr. Kitt failed to show that "he relied on misrepresentations by the defendants to induce him into performing, because his contractual obligation with NSO required him to perform." Furthermore, the court stated that Mr. Kitt had not "assert[ed] any provable damages[, because] the concert, his earnings, performances, and private teachings have increased." Finally, the trial court determined that Mr. Kitt's claims of "irritation, embarrassment, sleeplessness, and angst" arising from the alleged impersonation of him, were insufficient to qualify as intentional infliction of emotional distress in light of our strict interpretation of what constitutes outrageous conduct.

## ANALYSIS

### Standard of Review

We review the grant or denial of a summary judgment motion de novo. See Walton v. District of Columbia, 670 A.2d 1346, 1353 (D.C.1996). Summary judgment is appropriate only if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. See Colbert v. Georgetown Univ., 641 A.2d 469, 472 (D.C.1994) (en banc). It is " 'properly granted if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the

2. Mr. Kitt also alleged intentional interference with artistic integrity in his complaint, but did not appeal the dismissal of that count.

nonmoving party, (3) under the appropriate burden of proof.'" *Kendrick v. Fox Television,* 659 A.2d 814, 818 (D.C.1995) (quoting *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980)). "The moving party has the burden of 'demonstrating the absence of material disputed issues and the right to judgment as a matter of law.'" *Id.* (quoting *Galloway v. Safeway Stores, Inc.,* 632 A.2d 736, 738 (D.C.1993) (citation omitted)). "Once the movant has made such a prima facie showing, the nonmoving party has the burden of producing evidence that shows there is 'sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Id.* (quoting *Nader, supra,* 408 A.2d at 48 (citation omitted)). "Conclusory allegations by the nonmoving party are not sufficient for that purpose." *Id.* at 818–19 (citing *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198 (D.C.1991)).

After Capital Concerts moved for summary judgment, Mr. Kitt filed a statement of disputed material facts. Despite his allegations, our review of the record on appeal reveals no disputed issue of material fact.[3] "We thus turn to examine the only remaining issue—whether there exists a legal theory entitling [Mr. Kitt] to judgment." *Wolf v. Regardie,* 553 A.2d 1213, 1216 (D.C.1989) (citing *Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C. 1986); *Nader, supra,* 408 A.2d at 42).

*Invasion of Privacy—False Light Claim*

■ "This court has relied on the Restatement[ ] (Second) [of Torts'] formulation of the law applicable to 'invasion of privacy' in determining the appropriate contours of a cause of action for invasion of that right ...." *Vassiliades v. Garfinckel's,* 492 A.2d 580, 587 (D.C.1985) (citations omitted). An invasion of privacy—false light claim requires a showing of: 1) publicity 2) about a false statement, representation or imputation 3) understood to be of and concerning the plaintiff, and 4) which places the plaintiff in a false light that would be offensive to a reasonable person. RESTATEMENT (SECOND) OF TORTS § 652E (1977). "Failure to establish any one of these elements will defeat a plaintiff's cause of action." *Wolf, supra,* 553 A.2d at 1220.

■ Mr. Kitt argues that Capital Concerts invaded his privacy by casting him in a false light with a flawed impersonation "calculated to make it appear that [he] was engaging in buffoonery inconsistent with his status as the principal clarinetist of a distinguished symphony orchestra." Moreover, he contends that a jury, not the trial court, should have decided whether the telecast was "flattering" or "offensive." The trial court concluded, and we agree, however, that Mr. Kitt cannot establish a prima facie false light claim because he cannot show that the portrayal by the actor was "of and concerning the plaintiff" and "highly offensive to a reasonable person." Although Mr. Kitt contends that Capital Concerts placed him in a false light by hiring an actor to impersonate him "playing" the clarinet, he agrees that the actor neither resembled him, nor "played" the way that he would. Certainly, his peers in the music industry would not have mistaken the actor for him. Moreover, there were four other clarinetists in the NSO and, unlike in other cases, there was

---

**3.** The majority of facts alleged by Mr. Kitt, such as that Capital Concerts never personally asked him to appear in the beauty shot and NSO did not approve the proposed scene, are not only undisputed, but also immaterial to establishing a prima facie showing of his three claims, and thus, irrelevant in our analysis. Others are either not material also, conclusory, or amount to a question of law which the trial court properly decided: 1) a NSO member commiserated with him over the alleged impersonation; 2) he believes that the shot caused him not to be invited to join other orchestras; 3) he suffered distress as a result of the beauty shot; 4) the contract between NSO and Capital Concerts did not give Capital Concerts' partial or total artistic control; and 5) the image portrayed by the actor in the beauty shot was "of and concerning" him.

no identification of the actor, either as Mr. Kitt, or as the principal clarinetist. *Cf., Vassiliades, supra,* (defendant used plaintiff's actual before and after plastic surgery photographs); *Dempsey v. National Enquirer,* 702 F.Supp. 934 (D.Maine 1989) (defendant specifically attributed authorship of article to plaintiff). Thus, even viewing the evidence in the light most favorable to Mr. Kitt, we cannot conclude that the beauty shot was "of and concerning" him. *See Schaffer v. Zekman,* 196 Ill.App.3d 727, 143 Ill.Dec. 916, 554 N.E.2d 988, 991–92 (1990) (Plaintiff claimed false statement during editorial that " 'evidence was mishandled by the Medical Examiner's Office' " was "of and concerning" him because the office employed only two toxicologists, and he was the chief toxicologist. Although dismissing on other grounds, the court noted that the statement did not name or refer to plaintiff, nor mention toxicologists or the chief toxicologist. "At most, it refer[red] to a group of which [he] is a member, the ... Medical Examiner's Office."); *Bernstein v. National Broadcasting Co.,* 129 F.Supp. 817, 832 (D.D.C. 1955) (concluding that only link between plaintiff and television character in fictionalized dramatization about him—the alleged physical resemblance of the actor to the plaintiff twenty years prior—was "too tenuous a thread on which to permit a jury to hang identification, with consequent liability for invasion of privacy").

██ In addition, the facts alleged by Mr. Kitt are insufficient to satisfy the "highly offensive to a reasonable person" requirement. Indeed, as the trial court indicated, the actor was not "engaging in any sort of obnoxious or offensive behavior" and it was "unclear whether a musically sophisticated viewer would actually know who was playing." Consequently, based on the evidence presented, no jury could justifiably conclude that the beauty shot of a man in a tuxedo standing alone "playing" the clarinet would offend an ordinary, reasonable person. *See Machleder v. Diaz,* 801 F.2d 46, 49 (2d Cir.1986) (trial court erred in denying defendant's motions for a directed verdict and J.N.O.V. because no reasonable juror could have concluded that the alleged portrayal of plaintiff as "intemperate and evasive or as an illegal dumper. of chemical wastes" was highly offensive), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987); *Osby v. A & E Television Networks,* No. 96–7347, 1997 U.S. Dist. LEXIS 8656, at *16, 1997 WL 338855 (E.D. Pa. June 17, 1997) (no "reasonable person could ... find the two scenes of [plaintiff] walking in an airport [in a segment profiling another person engaged in criminal activity] 'highly offensive' "). Nonetheless, Mr. Kitt contends that a jury, not the trial court, should have decided whether the beauty shot would be offensive to "a reasonable performing artist." We have, however, previously stated that "[w]hile determining offensiveness in an invasion of privacy case is usually the province of the jury, the trial court must make a threshold determination of offensiveness in discerning the existence of a cause of action for intrusion." *Wolf, supra,* 553 A.2d at 1219 (citations omitted). Moreover, the offensiveness of such alleged tortious conduct is measured by an "ordinary, reasonable person" standard, not that of a reasonable performing artist, as Mr. Kitt incorrectly suggests. *Id.*

*Fraud*

██ "To be entitled to a trial on the merits of a fraud claim, a plaintiff must allege 'such facts as will reveal the existence of all the requisite elements of fraud. Allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.' " *Hercules & Co. v. Shama Restaurant Corp.,* 613 A.2d 916, 923 (D.C.1992) (quoting *Bennett v. Kiggins,* 377 A.2d 57, 59–60 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978)). The essential elements of common law fraud are: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon

the representation." *Id.* (citing *Bennett, supra,* 377 A.2d at 59). In addition, the plaintiff must show that "provable damages" resulted from the fraud. *Dresser v. Sunderland Apartments Tenants Ass'n,* 465 A.2d 835, 839 (D.C.1983). Mr. Kitt argues that he agreed to perform in the concert after relying upon Capital Concerts' false representation that it would not hire an actor to impersonate him. Thus, he claims that Capital Concerts is liable for defrauding him out of exercising the alternatives available to him as a union member, such as striking or refusing to work. We agree with the trial court that essential elements of a prima facie fraud case are lacking. In light of Mr. Kitt's contractual obligation with NSO to perform, there is no proof, much less the requisite clear and convincing evidence, that in playing the concert, he relied upon Capital Concerts' promise not to hire the actor. *See Hercules, supra,* 613 A.2d at 933 (must prove actual reliance); *Owens v. Curtis,* 432 A.2d 737, 739 (D.C.1981); *Bennett, supra,* 377 A.2d at 59 (fraud must be established by clear and convincing evidence).

▮ Furthermore, in his complaint, Mr. Kitt only makes a blanket allegation that his "professional and personal reputations were damaged, and [that] he sustained other damages." Indeed, he conceded during discovery, as the trial court noted, that "[s]ince the concert, his earnings, performances, and private teachings have increased." To recover in the District, "appellant's proof of damages [is] crucial." *Dresser, supra,* 465 A.2d at 839 (citations omitted); *see also Day v. Avery,* 179 U.S.App.D.C. 63, 74, 548 F.2d 1018, 1029 (1976) (per curiam) ("a *sine qua non* of any recovery for misrepresentation is a showing of pecuniary loss proximately caused by reliance on the misrepresentation"), *cert. denied,* 431 U.S. 908, 97 S.Ct.

1706, 52 L.Ed.2d 394 (1977) (citations omitted). Thus, we conclude that his fraud claim must also fail because he has not alleged any provable damages.

*Intentional Infliction of Emotional Distress*

▮ "To prove a claim of intentional infliction of emotional distress, 'a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Crowley v. North American Telecomms. Ass'n,* 691 A.2d 1169, 1171 (D.C.1997) (quoting *District of Columbia v. Thompson,* 570 A.2d 277, 289–90 (D.C.1990), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991) (internal quotation and citations omitted)). Mr. Kitt contends that Capital Concerts intentionally inflicted emotional distress upon him when it broke its promise to not hire an actor to impersonate him. He claims that he suffered "angst, sleeplessness, and humiliation ... as a result of comments and innuendos by colleagues and business associates."[4] These allegations, however, are simply insufficient to warrant liability under this tort theory for the following reasons. First, we have repeatedly stated that "'[t]o be actionable, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Weaver v. Grafio,* 595 A.2d 983, 991 (D.C.1991) (quoting *Howard Univ. v. Best,* 484 A.2d 958, 986 (D.C.1984) (internal quotations and citations omitted)); *see also Homan, supra* note 4, 711 A.2d at 818 (extreme and outrageous conduct does not include "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'") (quoting *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980) (citations omitted)).

---

4. Mr. Kitt also argues, incorrectly, that whether Capital Concerts' conduct was outrageous is necessarily a jury, not trial court, decision. *See Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) ("'It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous'" to be actionable.) (citations omitted).

Second, Mr. Kitt has offered no evidence proving that his discomfort was greater than a reasonable person could be expected to tolerate. *See Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982) (plaintiff must suffer from severe emotional distress " 'of so acute a nature that harmful physical consequences might be not unlikely to result' ") (citation omitted). Therefore, based on the record before us, we cannot say that an average member of the community would consider Capital Concerts' alleged broken promise so "extreme and outrageous" as to permit recovery for intentional infliction of emotional distress.

Accordingly, for the foregoing reasons, we conclude that the trial court was correct in entering summary judgment against Mr. Kitt in his false light, fraud, and intentional infliction of emotional distress claims.

*Affirmed.*