*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-432

JANE DOE, APPELLANT,

v.

BERNABEI & WACHTEL, PLLC, *et al.*, APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(CAB-7393-13)

(Hon. Maurice A. Ross, Trial Judge)

(Argued March 12, 2015                                        Decided June 25, 2015)

*Eric J. Menhart* for appellant.

*Laura N. Steel* for appellees Bernabei & Wachtel, PLLC, and Lynne Bernabei.

*Alan K. Kabat* filed a brief for appellee Meixing Ren.

Before THOMPSON and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

PRYOR, *Senior Judge*: Appellant appeals from the dismissal of a complaint, in multiple counts, relating to a matter which she alleges occurred at her place of employment. In the present action she asserts an invasion of privacy by a particular named co-employee, the law firm representing the co-employee and

other employees in a suit against their employer, and a member of that law firm. The entirety of appellant's case was dismissed in the trial court, and on appeal she assigns error to the dismissal of her claims for public disclosure of private facts, false light, misappropriation, negligent infliction of emotional distress, and intentional infliction of emotional distress. She does not appeal the dismissal of her claim of intrusion upon seclusion of another. For the reasons that follow, we affirm the dismissal of appellant's claims on the pleadings.

## I.  Factual and Procedural History

On September 6, 2012, appellant worked as a journalist at the Washington D.C. bureau of her employer.[1] Appellant alleges that her supervisor aggressively moved towards her, "touching her inappropriately," and demanded that she "hug" him, and allow him to lean against her. She asked the supervisor to let her leave, repeating "I need to go now." Appellant was able to record two minutes of this encounter on her iPhone. The record reveals that the video shows the knees and shoes of a person, some movement, and portions of two persons' clothing in close

---

[1] Appellant's employer was Phoenix Satellite Television (US), Inc., the U.S. subsidiary of a major Chinese media conglomerate, Phoenix Satellite Television Holdings, Ltd. (collectively, "Phoenix").

proximity. According to the complaint, appellant and her supervisor spoke Chinese throughout the encounter.

Appellant contacted several other employees at the company, including appellee Meixing Ren, seeking their opinion regarding what action she should take. Several employees, including appellee Ren, agreed to help appellant pursue a claim before the U.S. Equal Employment Opportunity Commission ("EEOC"). Ren asked for a copy of the video, and appellant complied. Appellant retained counsel and filed an EEOC claim, which resulted in a settlement with her employer.

In July of 2013, Ren and other co-employees of appellant filed suit against Phoenix, alleging that they had suffered retaliation for their role in helping appellant. They retained the law firm Bernabei & Wachtel, PLLC ("B&W"), to represent them, and appellant alleges that Ren subsequently gave B&W a copy of the video. B&W issued a press release in Chinese and English that resulted in multiple news stories.

Appellee Lynne Bernabei, a lawyer in the B&W law firm, allegedly used appellant's full name on her micro-blog, and also conducted an interview on a website that included appellant's full name in the text of the interview, as well as a copy of the video depicting appellant's workplace incident. Appellees also

allegedly released the video to local television stations, and posted it for public consumption on YouTube. Appellant learned of the video's publication when friends, colleagues and members of the public began to ask about the video and her association with it; appellant claims that as a result she suffered severe emotional distress.

Retaining counsel again in September of 2013, appellant filed suit against the instant defendants, alleging four counts of invasion of privacy, two counts of copyright infringement, and additional counts of intentional and negligent infliction of emotional distress. The copyright infringement counts were dismissed early in the litigation, and all of the remaining counts (for invasion of privacy and infliction of emotional distress) were dismissed following defendants' motion to dismiss, and a subsequent motion for partial reconsideration. This appeal followed.

## II. Analysis

### A. Scope of Review

We review dismissals under Super. Ct. Civ. R. 12 (b)(6) *de novo*, as questions of law. *Klayman v. Segal*, 783 A.2d 607, 612 (D.C. 2001). "To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the

elements of a legally cognizable claim." *Woods v. District of Columbia*, 63 A.3d 551, 552-53 (D.C. 2013). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), the Supreme Court stated that in order to survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level. . . ." Still later the Court reiterated, in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555), that the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" "The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." *Klayman*, 783 A.2d at 612 (citing *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 877 (D.C. 1998)).

## B. Invasion of Privacy

"Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Wolf v. Regardie*, 553 A.2d 1213, 1216-17 (D.C. 1989). "In the District of Columbia, courts have adopted the Second Restatement of Torts to 'determin[e] the appropriate contours of a cause of action for' invasion of privacy." *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 11 (D.D.C. 2013) (citing *Vassiliades v.*

*Garfinckel's, Brooks Bros.*, 492 A.2d 580, 587 (D.C. 1985) (brackets in original)).

"The four constituent torts are (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit." *Wolf*, 553 A.2d at 1217. As appellant does not pursue her intrusion upon seclusion claim on appeal, we discuss each of the three remaining theories in turn, before addressing infliction of emotional distress.

### 1.  Public Disclosure of Private Facts

The Restatement articulates this form of the tort, on the basis of case decisions, as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

RESTATEMENT (SECOND) OF TORTS § 652D (1977), Publicity Given to Private Life. Comment a. — publicity — articulates a distinction between publication of a private matter and giving publicity to a person's private life. Publication "includes any communication by the defendant [about a private fact] to a third person." *Id.*

at cmt. a. Publicity means that the defendant has communicated the matter in such a manner that it is "substantially likely to become one of public knowledge." *Id.*

Comment h — private facts — states in pertinent part:

> [A] line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern.

Comment c — highly offensive publicity — states in pertinent part:

> The rule stated in this Section gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable man. The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens.

This court has similarly defined this form of the tort as requiring "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts, (4) in which the public has no legitimate concern, (5) and which would be highly offensive to a reasonable person of ordinary sensibilities." *Wolf*, 553 A.2d at 1220.

In this instance, appellant has pleaded that appellee Ren, having received a copy of the video from appellant, made it available to appellee law firm. Appellee Bernabei, a lawyer in the firm, conducted an interview on a website about the incident using appellant's name. It is also pleaded that the law firm posted the video on YouTube. Appellant pleaded as well that she was randomly contacted by friends and third persons about the matter. As to the pleading requirement of publicity given to private life, we conclude that appellant has set forth sufficient facts to establish those elements of the tort. However, more is required. Appellant must also plead factual allegations that the publicity concerning the private life of appellant "would be highly offensive to a reasonable person and . . . not of legitimate concern to the public." RESTATEMENT (SECOND) OF TORTS § 652D.

The Comments to these elements indicate that by design, the latter requirements are to be viewed objectively rather than subjectively. Throughout this litigation — in the trial court and on appeal — appellant has espoused the view that the publicity by the appellees of the incident alleged is subjectively offensive to her and is of no legitimate concern to the public. Given the circumstances of this case, including the limited nature of what is actually shown in the video and the disclosure of the matter to some members of the public, we conclude that appellant has not set forth sufficient facts to establish that publicizing this matter

would be highly offensive to a reasonable person, and of no legitimate concern to the public, and thus entitle her to relief under this cause of action.

## 2. False Light

Appellant's false light claim fails from the outset — since she cannot point to a "false statement, representation or imputation" in defendants' disclosures. *Bean v. Gutierrez*, 980 A.2d 1090, 1094 (D.C. 2009). A "false light claim . . . requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Id*. Although appellant's complaint claims that the video "raises concerns that [appellant] will be represented as sexually promiscuous, voyeuristic, subversive or similar, particularly . . . where the vast majority of viewers will not understand the spoken language," this amounts only to a claim that a recipient of the publication could misperceive the truth — not that the video itself (or the video in context) makes a "false statement, representation or imputation." *Bean*, 980 A.2d at 1094. Even construing appellant's allegations in the light most favorable to her, we conclude that "no reasonable person who viewed and heard the broadcast could have received the [false] impression." *Harrison v. Washington Post Co.*, 391 A.2d 781, 783-84 (D.C. 1978) ("the trial court must decide if the words (and herein, the

accompanying film strip) are reasonably susceptible of or reasonably could be understood to have the meaning suggested"); *id*. at 784 n.8; *see also Klayman*, 783 A.2d at 618-19; *Vassiliades*, 492 A.2d at 592-93. We conclude that the trial court did not err in dismissing appellant's false light count.

### 3. Misappropriation

"The District of Columbia has adopted the definition set forth by the RESTATEMENT (SECOND) OF TORTS § 652C for . . . the tort of misappropriation of name." *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 55 (D.D.C. 2010); *see also Vassiliades*, 492 A.2d at 592-93. "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." RESTATEMENT (SECOND) OF TORTS § 652C (1977). The comments to this section state that the protection provided is directed to the use of a person's identity as represented by one's name or likeness. *Id*. at cmt. a. Thus "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Id*. at cmt. c. The value of such use is not appropriated by mention of the plaintiff's name or likeness for legitimate purposes. *Id.* at cmt. d.

Here, appellant's complaint alleged that her "role as a visible journalist and successful claimant against the Employer had the effect of improving the credibility of the Employee lawsuit," and that the defendants "impl[ied] that [she] supports or is otherwise involved in the Employee lawsuit." In the circumstances pleaded and given the limited nature of the video, we conclude that these allegations are too conclusory. *See Budik*, 986 F. Supp. 2d at 12 ("the complaint . . . includes only conclusory allegations concerning the public interest in or value to the defendant of the plaintiff's likeness and name"). Appellant has adequately pleaded only that the defendants publicized her video to explain the basis for their lawsuit against appellant's employer. Since the "[i]ncidental use of name or likeness or publication for a purpose other than taking advantage of a person's reputation or the value associated with his name will not result in actionable appropriation," *Vassiliades*, 492 A.2d at 592, the trial court did not err in dismissing appellant's misappropriation claim.

## C. Infliction of Emotional Distress

In addition to her privacy claims, appellant asserts that defendants have committed both negligent and intentional infliction of emotional distress. As to negligent infliction of emotional distress, we have held that:

> [A] plaintiff may recover for negligent infliction of emotional distress if the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011) (en banc).

In *Hedgepeth*, the court reversed summary judgment, finding that a duty to avoid negligent infliction of emotional distress existed "in the context of a doctor-patient relationship" between Mr. Hedgepeth and a medical clinic. *Id.* at 792. Here, appellees Lynne Bernabei and Bernabei & Wachtel, PLLC, in representing Mr. Ren, have no relationship or obligation to appellant of the sort that this court discussed in *Hedgepeth*. Although appellant points to the duties that an attorney owes to third parties as a source of obligation that Ms. Bernabei and her firm owed to appellant, courts have been reluctant to impose a duty to avoid negligent infliction of emotional distress to clients even upon the attorneys who represent them, because "[i]n these cases, it cannot be said that the plaintiff's emotional well-being is necessarily implicated by the defendant's undertaking or relationship with the plaintiff." *Hedgepeth*, 22 A.3d at 815 (collecting cases). In the circumstances of this case, we decline to impose such a duty upon Ms. Bernabei or

Bernabei & Wachtel, PLLC. Thus, appellant has failed to plead facts sufficient to establish the elements of a claim for negligent infliction of emotional distress.

As to intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (brackets in original). Here, appellant has alleged insufficient facts to permit a reasonable inference of "extreme or outrageous conduct." *Id.* "To survive a motion to dismiss," a plaintiff must allege conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Williams v. District of Columbia*, 9 A.3d 484, 494 (D.C. 2010). Appellant's factual allegations, even when viewed in the light most favorable to her, cannot meet this standard.

### III. Conclusion

We conclude, in our review of the causes of action dismissed by the trial court and maintained on appeal, that appellant has failed to plead sufficient facts

— as to each cause of action — to establish the elements of a legally cognizable claim.

*Affirmed.*