**Catherine DANAI, Appellant,**

v.

**CANAL SQUARE ASSOCIATES, Appellee.**

**No. 02–CV–126.**

District of Columbia Court of Appeals.

Argued March 13, 2003.
Decided Dec. 2, 2004.

William N. Rogers, Washington, for appellant.

Aurelius K. Wilson for appellee.

Before RUIZ, REID and WASHINGTON, Associate Judges.

REID, Associate Judge:

This case stems from a dispute over the nonrenewal of appellant Catherine Danai's ("Ms. Danai") multi-year lease agreement with appellee Canal Square Associates ("Canal") for office space. After the trial court rendered judgment in favor of Canal for possession of the space, Ms. Danai filed a claim for invasion of privacy against Canal, alleging that Canal removed a discarded letter from her trash and used it against her in the possession lawsuit. The trial court granted summary judgment in favor of Canal. We affirm the judgment of the trial court, and hold that Ms. Danai had no reasonable expectation of privacy in trash collected from her office and placed with other office trash in a locked community room under the control of property managers for ultimate disposal off-site.

## FACTUAL SUMMARY

Ms. Danai is the President and Chief Executive Officer of PERS Travel, Inc. ("PERS"). On August 14, 1994, she entered into a five-year renewable lease with Canal for office space in a building located in the Northwest quadrant of the District of Columbia. On October 1, 1999, Canal filed a complaint for possession against PERS, claiming that PERS failed to renew its lease in a timely manner. During a bench trial on its complaint, Canal used a letter, which it had obtained from trash discarded by PERS, to impeach Ms. Danai's testimony as to her understanding of the renewal provision in her lease agreement. The trial court rendered judgment

in favor of Canal. Subsequently, Ms. Danai filed a complaint against Canal on July 3, 2000, alleging invasion of privacy and intentional infliction of emotional distress.[1]

With respect to her invasion of privacy claim (count one of the complaint), Ms. Danai alleged, in part, that Canal's "search of [her] trash constituted an intentional intrusion into [her] private affairs and an invasion of her privacy ... [and was] of a character highly offensive to a reasonable man." In the "undisputed issues/stipulations" section of their joint pre-trial statement, Ms. Danai and Canal agreed on certain basic facts:

Trash collected from the various commercial suites is accumulated in the buildings' trash room. Management exercises control and authority over the buildings' trash room, the contents therein and ultimately disposes of trash off-site.

On or about March 30, 1999, [Ms. Danai] wrote correspondence addressed to [Canal], then subsequently tore up and discarded same in the trash.

Canal retrieved [the discarded correspondence] from the buildings' trash room and presented same as impeachment evidence during a bench trial ... in a commercial landlord tenant matter involving the parties.

Canal moved for summary judgment contending it "did not intrude on any physical space in which [Ms. Danai] had any recognizable privacy interest," and that she "relinquished any legitimate expectation of privacy" in the trash she discarded. The trash is collected from commercial and retail offices and suites in the building and put in a community trash room where "access is generally limited to management

1. On October 26, 2001, the trial court granted Canal's motion for summary judgment on the intentional infliction of emotional distress claim (count two of Ms. Danai's complaint). No issue regarding the trial court's judgment as to count two has been raised on appeal.

personnel in the building." Ms. Danai opposed Canal's motion for summary judgment; she declared in part in her attached affidavit:

As to my expectations of privacy relative to material placed in the trash baskets in my office, I always assumed that my Landlord would handle these in a manner so that no one else had access to the material placed in the trash cans. In fact, the collected trash was kept, to my knowledge, in a locked room under the control of the property managers. I never conceived that the property managers, themselves, would invade my privacy and pick through my trash looking for evidence to use against me . . . .

[M]uch of my private, personal correspondence was done by me in handwritten letters or memos, which I would fax to the recipient and then throw away the original (into) the waste paper basket.

The trial court granted Canal's summary judgment motion as to Ms. Danai's invasion of privacy claim, stating in part:

[Ms. Danai] cannot establish that [Canal's] retriev[al] from a communal trash site [of the] discarded letter . . . satisfies the essential elements of an intrusion upon her solitude or seclusion . . . . [She] cannot establish that she had a recognizable or protectable privacy interest in the integrity or inviolability of commercial refuse stored at a common site for further collection and disposal . . . .

The letter and envelope [that Canal] concededly recovered "by rummaging through the community trash room after the trash of the entire building had been accumulated therein," . . . were not purloined from [Ms. Danai's] desk, files, or office space, nor were they [extracted] from wastepaper bins or receptacles within [Ms. Danai's] office or in areas otherwise under her control. Instead, [Canal] recovered a torn letter from within an envelope addressed to [it] . . . by examining common waste in a separate site within a commercial office building.

Citing *Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C.1989), the trial court also concluded that the "circumstances of recovery [of the discarded correspondence] could not be regarded as 'highly offensive to an ordinary, reasonable person'"; and that "no reasonable juror——to whom the issue would ordinarily (and ultimately) be submitted——could determine that [Canal's] retrieval of the abandoned letter was . . . 'highly offensive to the ordinary, reasonable person.'" Ms. Danai filed a timely appeal.

## ANALYSIS

Ms. Danai asserts that the trial court "viewed the inferences from the undisputed facts [in this case] in a light *least* favorable to her." (Emphasis supplied). Further, she argues, "[c]ommon sense dictates that people who work in an office environment have a 'subjective expectation of privacy' with respect to things—be they correspondence or otherwise—that they place in the office trash can." She maintains that since Fourth Amendment case law recognizes an objectively reasonable expectation of privacy in one's refuse, she did not abandon the discarded letter. In addition, she claims that "the trial court placed far too much emphasis upon [her,] the [t]enant, and her expectations and far too little on the fides and intentions of [Canal,] the [l]andlord, and ignored, totally, two factors which distinguish this case from any other case of invasion of privacy of this nature, and that is: (1) *who* was the party doing the invasion and (2) *why* was the invading party doing it?" (Emphasis supplied). She also claims that the issue of whether the "highly offensive to an ordi-

nary, reasonable person" standard was met in this case should have been presented to the jury.

Canal argues that it "did not intrude on any physical space in which [Ms. Danai] had any recognizable privacy interest." It also contends that when Ms. Danai "tore up and discarded" the correspondence at issue in this case, she "abandoned the property and relinquished any legitimate expectation of privacy therein"; and further, citing *Wolf, supra*, 553 A.2d at 1219, supports the trial court's "'threshold determination of offensiveness in discerning the existence of a cause of action for intrusion.'" With respect to Ms. Danai's jury trial argument, Canal points out that the essential facts were not in dispute and that summary judgment was appropriate in this case because Ms. Danai "failed to meet [her] burden as to each element of her invasion of privacy claim."

We review the trial court's disposition of a summary judgment motion *de novo. Travelers Indem. Co. v. United Food and Commercial Workers Int'l Union*, 770 A.2d 978, 985 (D.C.2001) (citation omitted). "Summary judgment is proper under Superior Court Civil Rule 56 where the record shows that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). "The court must view the record and draw all reasonable inferences in the light most favorable to the appellant, and a motion for summary judgment should be denied unless the moving party can show that no reasonable juror could find for the nonmoving party." *Id.* (citing *Galloway v. Safeway Stores, Inc.*, 632 A.2d 736, 738 (D.C.1993)). Since the parties in this case acknowledge that there are no material issues of fact in dispute, we need only determine whether Canal was entitled to summary judgment on Ms. Danai's invasion of privacy claim as a matter of law.

■ At least since *Pearson v. Dodd*, 133 U.S.App. D.C. 279, 410 F.2d 701 (1969), the District of Columbia has recognized intrusion upon seclusion as one type of invasion of privacy.[2] Our decision in *Wolf, supra*, identified four types of the invasion of privacy tort, including "intrusion upon one's solitude or seclusion." *Id.* at 1217.[3] We incorporated the following legal standard from the RESTATEMENT (SECOND) OF TORTS § 652B (1977), in developing our approach to this type of privacy invasion: "One who intentionally intrudes, physically

2. The *Pearson* court stated:

> We approve the extension of the tort of invasion of privacy to instances of intrusion, whether by physical trespass or not, into spheres from which an ordinary man [or woman] in a plaintiff's position could reasonably expect that the particular defendant should be excluded. Just as the Fourth Amendment has expanded to protect citizens from government intrusions where intrusion is not reasonably expected, so should tort law protect citizens from other citizens. The protection should not turn exclusively on the question of whether the intrusion involves a technical trespass under the law of property. The common law, like the Fourth Amendment, should "protect people, not places."

133 U.S.App. D.C. at 282, 410 F.2d at 704 (quoting *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576).

3. We said:

> Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded. The four constituent torts are (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit.

*Wolf, supra*, 553 A.2d at 1216–17 (citing *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 587 (D.C.1985) (other citation and footnote omitted)).

or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." We distilled three elements of this tort:

> (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself [or herself], or into his [or her] private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person.

*Wolf, supra,* 553 A.2d at 1217 (citations omitted).

■ We have not considered previously whether the tort of intrusion upon seclusion occurs when an item is taken that has been collected from the wastepaper basket in a person's office and placed with trash from other offices in a locked community trash room under the control of the property managers for disposal of off-site.[4] Before addressing the legal aspects of the issue presented, we summarize the pertinent facts.

Ms. Danai tore a March 30, 1999, letter she had written to Canal into large pieces and placed the pieces in a wastepaper basket in her office. According to an affidavit provided by her in opposition to Canal's motion for summary judgment, "trash [from her office and others in the building] was picked up daily by crews under the supervision of RB Associates, the property managers for Canal [ ]." The trash was taken to "a locked room under the control of the property managers." Ms. Danai did not indicate that she had requested segregation of her trash, or that she had a key to this trash room and could readily retrieve the trash collected from her wastepaper basket after it was placed in the community trash room. On April 1, 1999, the Vice President of RB Associates, Ted Vogel, went through the trash taken from Ms. Danai's office and retrieved the torn letter addressed to Canal. The letter was used in Canal's suit against Ms. Danai to show she was aware of her failure to give timely notice of intent to renew her lease, and therefore, her eviction was justified.

■ To prevail upon her claim of intrusion upon seclusion, Ms. Danai must establish not merely the first element of the tort, that is, "an invasion or interference by physical intrusion," *Wolf, supra,* 553A.2d at 1217, here the rummaging through her trash by Canal's agent, Mr. Vogel of RB Associates and the taking of the discarded letter, but also must show, under the second element, that the invasion or physical intrusion was "into a place where [she] secluded [herself], or into [her] private or secret concerns," *id.*[5] Al-

---

4. The types of invasion intrinsic in the tort of intrusion upon seclusion are those such as harassment; peeping through windows or into some other locations in which a plaintiff has chosen to seclude himself; opening personal mail; eavesdropping on private conversations; entering a plaintiff's home without permission or searching his or her belongings; examining a plaintiff's private bank account; or other invasions of that nature. *Wolf,* 553 A.2d at 1217–18 (citations omitted). Other examples are set forth in the Comments & Illustrations to § 652B of the Restatement,

*supra.* In addition, the United States District Court for the District of Columbia denied a defendant's motion to dismiss plaintiffs' claims for intrusion upon seclusion invasion of privacy where plaintiffs were subjected to strip and squat searches. *See Helton v. United States,* 191 F.Supp.2d 179 (D.D.C.2002).

5. The analytical concept of a reasonable expectation of privacy, developed in the constitutional Fourth Amendment context (especially as applied to trash), is useful in the civil tort context in discerning the meaning of "se-

though there was an invasion into Ms. Danai's trash, it did not occur in her office.[6] Rather it took place in the community trash room, which was a place of seclusion for neither Ms. Danai nor her trash. Indeed, other trash from the building was placed in the same room, and according to Ms. Danai's affidavit, the locked trash room was "under the control of the property managers." There is no evidence that she possessed a key to the locked room, nor gave instructions to the property managers to keep her trash intact and under seal. Thus, Ms. Danai had no "legitimate expectation of privacy in the invaded place," the locked community trash room. *Godfrey, supra,* 408 A.2d at 1245.

■ Since Ms. Danai cannot establish that the community trash room was a place of seclusion for her or her trash, she must demonstrate that the torn letter retrieved by Canal's agent constituted an intrusion into her private or secret concerns. Her affidavit states: "much of my private, personal correspondence was done by me in hand-written letters or memos, which I would fax to the recipient and then throw away the original (into the wastepaper basket)." In essence, she contends

she had a subjective expectation of privacy with respect to her discarded papers.

Among other things, the Fourth Amendment protects "[t]he right of people to be secure in their ... papers, and effects, against unreasonable searches and seizures ...." In interpreting the Fourth Amendment and explaining the right to privacy, Justice Harlan wrote in *Katz, supra:* "My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* at 361, 88 S.Ct. 507; *see also Kyllo v. United States,* 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) ("[A] Fourth Amendment search does not occur ... unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as reasonable.'") (quoting *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)). And in *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the court held: "The warrantless search and seizure of the

cluded place" and "private concern" as those terms apply to this case involving trash. *See* Gordon J. Macdonald, *Stray Katz: Is Shredded Trash Private,* 79 Cornell L.Rev. 452 (1994). Indeed, the link between common law privacy and constitutional privacy under the Fifth and Fourteenth Amendments has been noted historically. *See* Hugh Miller, II, *DNA Blueprints, Personhood, and Genetic Privacy,* 8 Health Matrix 179, 187 (1998) ("The Supreme Court [has] recognized a constitutional basis for [the] common law right to privacy as an aspect of the right to liberty guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments."); *see also Welsh v. Roehm,* 125 Mont. 517, 241 P.2d 816, 819 (1952) ("The basis of the 'right of privacy' is the 'right to be let alone' and it is 'a part of the right to liberty and pursuit of

happiness.'") (quoting *Barber v. Time, Inc.,* 348 Mo. 1199, 159 S.W.2d 291, 294 (1942)).

6. Ms. Danai relies on *United States v. Kahan,* 350 F.Supp. 784 (S.D.N.Y.1972) for the proposition that "it is even more true in the case of a wastebasket than of a desk that an employee expects that its contents will be left alone by others." *Id.* at 792–93. The wastebasket in *Kahan* "was [located] either beside or under [the] defendant's desk and was reserved for his exclusive use." *Id.* at 350 F.Supp. at 790. *But see United States v. Shelby,* 573 F.2d 971, 973–74 (7th Cir.1978) ("It is common knowledge, at times due to the unfortunate circumstances of some persons or even just for curiosity or mischief, that others may disturb one's trash.").

[opaque, sealed plastic] garbage bags left at the curb outside [a] house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." *Id.* at 39, 108 S.Ct. 1625 (citations omitted).

■ Here, we agree that Ms. Danai had a subjective expectation that her trash would remain private and that neither Canal nor its property managers would invade that trash. Her affidavit says as much. But that is not the end of our inquiry under *Katz, Greenwood and Kyllo.* Ms. Danai must establish that "society [is] willing to recognize [her] expectation as reasonable." *Kyllo, supra,* 533 U.S. at 33, 121 S.Ct. 2038. She argues that the trial court paid too little attention to "the conduct of the invader" and the "intentions of the landlord." The court would properly focus on "the conduct of the invader" were this a case where a corporate agent opened mail marked personal and addressed to Ms. Danai. *See Vernars v. Young,* 539 F.2d 966, 969 (3d Cir.1976) ("opening plaintiff's private mail and reading it without authority" constitutes intrusion into private or secret concerns). There the court stated: "Just as private individuals have a right to expect that their telephonic communications will not be monitored, they also have a reasonable expectation that their personal mail will not be opened and read by unauthorized persons." *Id.* at 969. Opening an individual's personal mail, without authority, before the addressee has had a chance to read it, however, is not the same as rummaging through and retrieving a voluntarily discarded letter from trash located in a locked room controlled by a defendant's

agent. Thus, the question we now confront is whether Ms. Danai had a reasonable expectation of privacy in the trash she discarded in her wastepaper basket that ended up in a locked community trash room under the control of the property managers.

"The vast majority of courts have ruled that ... the individual who placed [the] garbage [or trash] for collection either abandoned it or has no reasonable expectation of privacy therein, thus rendering any search and seizure of that trash lawful." Kimberly J. Winbush, Annotation, *Searches and Seizures: Reasonable Expectation of Privacy in Contents of Garbage or Trash Receptacle,* 62 A.L.R. 5th 1 (1998); Gordon J. MacDonald, *Stray Katz: Is Shredded Trash Private?* 79 CORNELL L. REV. 452, 464 (1994). Here, Ms. Danai knowingly and voluntarily abandoned objects she placed in her trash. She relinquished control over them, knowing that they were readily accessible to a third party, the property managers and the landlord, upon collection from her office for mixing with other trash in a community trash room, and ultimately accessible to others when the trash was removed and discarded off-site.[7] The fact that the community trash room was locked by itself does not support an objective, reasonable expectation of privacy on Ms. Danai's part. Public trash cans and dumps often are locked or bolted to some extent to prevent their contents from being disturbed, for example, by animals or scavengers. And, in *Greenwood, supra,* the trash had been placed in sealed, opaque plastic bags, but the court found no reasonable expectation of privacy. The fact that the trash bags in *Greenwood* had been placed outside at the

7. As Justice Frankfurter said in *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960): "So far as the record shows, petitioner had abandoned [items placed in a wastepaper basket in a hotel room]. He had thrown them away. So far as he was concerned, they were *bona vacantia." Id.* at 241, 80 S.Ct. 683.

curb was significant, but so too was the fact that others had access to the bags:

> [W]e conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondent's trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," *United States v. Reicherter,* 647 F.2d 397, 399 (3d Cir.1981), respondents could have had no reasonable expectation of privacy in the ... items that they discarded.

*Id.* at 36–37, 108 S.Ct. 1625 (footnotes and other citations omitted).

██ Here, admittedly Ms. Danai did not place her garbage "at the curb" but she did convey it to a third party, the property managers, who in turn made arrangements for discarding it to yet another party, the outside trash collector. Thus, as in *Greenwood,* the property managers and the trash collector could have been expected to sort through Ms. Danai's trash and permit others to do the same. A locked community trash room under the control of property managers is not akin to "the curtilage" of Ms. Danai's office space. That is, it is not "the area to which extends the intimate activity associated with the sanctity of a [person's] ... privacies of life." *California v. Ciraolo,* 476 U.S. 207, 212, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (citations omitted). And, Ms. Danai made no "special arrangement" for the handling of her trash. As the court declared in *United States v. Crowell,* 586 F.2d 1020, 1025 (4th Cir.1978), "absent proof that a person has made some special arrangement for the disposition of [her] garbage inviolate, [she] has no reasonable expectation of privacy with respect to it once [she] has placed it for collection," and it has been removed to a locked community trash room under the control of the property managers. *Id.* at 1025. Ms. Danai both abandoned and relinquished control over the discarded letter. Just as "a person who places trash at a curb to be disposed of or destroyed by a third person abandons it ....," *United States v. Scott,* 975 F.2d 927, 929 (1st Cir.1992) (footnote omitted), so too does an individual who allows her trash to be collected and placed in a locked community trash room over which she has no control. While Ms. Danai may have desired to keep her personal communications secret and private, hers was "a failed attempt," *id.* at 930, and a properly instructed jury could not have found that she had a reasonable expectation of privacy in the discarded letter. In short, Ms. Danai has not satisfied the second prong of a privacy action for intrusion upon one's solitude or seclusion, and the trial court properly granted Canal's motion for summary judgment.[8]

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

---

8. In light of our conclusion regarding the second prong, we need not address the third prong, whether the invasion "would be highly offensive to an ordinary, reasonable person." and whether that question should be submitted to a jury for decision.