*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-685

GREENPEACE, INC., APPELLANT,

v.

THE DOW CHEMICAL COMPANY, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-8036-11)

(Hon. Michael L. Rankin, Trial Judge)

(Argued April 9, 2014                          Decided August 21, 2014)

*Emmy L. Levens*, with whom *Kit A. Pierson*, *Victoria S. Nugent*, *John P. Relman* and *Reed N. Colfax* were on the brief, for appellant.

*Gregory Silbert*, with whom *Steven A. Tyrrell* and *David J. Lender* were on the brief, for appellee The Dow Chemical Company.

*Lori Alvino McGill*, with whom *Abid R. Qureshi*, *John Cooper*, *Katherine Gigliotti*, and *Stephen P. Barry* were on the brief, for appellee Ketchum, Inc.

*Mark Emery*, with whom *Richard C. Smith*, *Tracy S. DeMarco*, and *Matthew H. Kirtland* were on the brief, for appellee Sasol North America, Inc.

*Tina M. Maiolo*, *Paul J. Maloney*, and *Alexander M. Gormley* were on the brief for appellee Dezenhall Resources, Ltd.

*Brynja M. Booth*, *Sarah M. Everhart*, and *David R. Thompson* were on the brief for appellees Timothy Ward, Jay Bly, Michael Mika, and George Ferris.

*Alan L. Hirsch*, *Lynne Bernabei*, and *Alan R. Kabat* were on the brief for *amici curiae*.

Before BLACKBURNE-RIGSBY and THOMPSON, *Associate Judges*, and STEADMAN, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*: This case involves alleged corporate espionage, and the issue of whether a corporation has a claim for trespass or conversion against another for rummaging through the corporation's trash in search of "trade secrets" and other confidential information. Appellant Greenpeace, Inc. ("Greenpeace") filed suit against appellees,[1] claiming that they conspired and engaged in various forms of unlawful corporate espionage with the intent to discover and undermine Greenpeace's environmental campaigns. The trial court granted appellees' motions to dismiss Greenpeace's claims of trespass to common areas of the office buildings in which it was a tenant, invasion of privacy by intrusion of its private concerns, offices, and staff, and conversion of its confidential information.[2] On appeal, Greenpeace argues that the trial court erred

---

[1] The Dow Chemical Company, Ketchum, Inc., Sasol North America, Inc., Dezenhall Resources, Ltd., Timothy Ward, Jay Arthur Bly, Michael Mika, and George Ferris, collectively.

[2] The trial court also dismissed Greenpeace's claims of trespass to chattel and trespass as to electronic surveillance, neither of which Greenpeace further pursues on appeal. Greenpeace voluntarily dismissed its claims for trespass to Greenpeace's offices and misappropriation of trade secrets, *see* D.C. Code §§ 36-401 to -410 (2001), with prejudice after the court denied its request to certify the dismissed claims for interlocutory appeal and to stay discovery.

in dismissing these claims because: (1) Greenpeace has a possessory interest in the common areas of the office buildings in which it was a tenant; (2) appellees improperly intruded on Greenpeace's office and staff; and (3) the trial court erred in declining to recognize a claim of conversion of the intangible information contained in the documents taken by appellees from its trash. However Greenpeace's factual allegations may be regarded, Greenpeace's legal arguments cannot prevail as a matter of law, and therefore we affirm the dismissal.[3]

### I.    Factual Background

Greenpeace is a nonprofit corporation headquartered in Washington, D.C. It campaigns to protect the environment and to prevent toxic pollution, global warming, nuclear hazards, and genetic engineering. The Dow Chemical Company ("Dow") sells chemical, plastic, and agricultural products and services. It is the world's largest producer of chlorine, which it uses to manufacture other products. Dioxin, a carcinogen, is a byproduct of manufacturing with chlorine. Dow is also a

---

[3] Additionally, *amici curiae* in support of Greenpeace (Essential Information, The Center for Health, Environment & Justice, Rainforest Action Network, The Institute for Agriculture and Trade Policy, and The Center for Food Safety, collectively) argue that this court should hold, as a matter of public policy, that an actor may be held liable for searching through another's refuse for confidential information or trade secrets. We decline to do so because Greenpeace has not pleaded a legally recognized cause of action.

major producer of genetically modified organisms ("GMO"). Sasol North America, Inc. ("Sasol"), formerly CONDEA Vista Company,[4] is also a commodity and specialty chemicals producer. Between 1984 and 2001, Sasol operated a vinyl chloride manufacturing facility in Lake Charles, Louisiana. Both Dow and Sasol were the focus of Greenpeace's environmental campaigns. Specifically, between 1995 and 1999, Greenpeace criticized Dow, published "numerous reports" on the dangers of dioxin, and campaigned against the GMO industry. Greenpeace also campaigned against Sasol and its vinyl chloride production in the Lake Charles region. Ketchum, Inc. ("Ketchum") and Dezenhall Resources, Ltd. ("Dezenhall") are both large public relations firms, which were hired by Dow and Sasol, respectively. Timothy Ward, Jay Arthur Bly, Michael Mika, and George Ferris (collectively, "individual appellees"), were high-level employees of the now-defunct private security firm Beckett Brown International ("BBI"). Greenpeace claims that most of the key executives and employees at BBI were formerly agents of the Secret Service and the Central Intelligence Agency.

---

[4] The company was founded in 1984 as "CONDEA Vista Company" ("CONDEA"). In 1991, it became a wholly-owned subsidiary of RWE-DEA AG, a German oil and gas producer. On March 1, 2001, Sasol, Ltd. purchased CONDEA, and CONDEA, thereafter, changed its name to Sasol North America, Inc., a subsidiary of Sasol, Ltd. Although the company was called CONDEA Vista Company during the period of time relevant to this complaint, for purposes of simplicity, we shall refer to the company at all times by its current name "Sasol."

In the instant action, Greenpeace alleges two distinct conspiracies committed by two groupings of appellees occurring roughly concurrently between 1998 and 2001. The first conspiracy involves Dow, Ketchum, and BBI. The complaint alleges that, between at least 1998 and 2001, Dow paid Ketchum to help it obtain confidential information from Greenpeace, and that Ketchum, in turn, hired BBI to effectuate that purpose. The second conspiracy involves Sasol, Dezenhall, and BBI. The complaint similarly alleges that, at least between 1998 and 2000, Sasol paid Dezenhall to help it secure information from Greenpeace, and that Dezenhall engaged BBI for the job. BBI referred to its work for Sasol/Dezenhall as the "Lake Charles Project." It is not alleged that Dow/Ketchum and Sasol/Dezenhall colluded together; rather, the two conspiracies are presented as distinct. However, the conspiracies were closely related and had substantial commonalities. In both instances, large corporations are alleged to have engaged BBI for the purpose of procuring confidential information from Greenpeace.

BBI (through the acts of the individual appellees) is alleged to have engaged in, essentially, three invasive methods of intelligence gathering from Greenpeace: (1) "D-lines," which involved recovering documents from the dumpsters and recycling bins that Greenpeace used for its trash; (2) physically infiltrating and breaking into Greenpeace's office, along with monitoring and surveilling

individuals associated with Greenpeace; and (3) electronic surveillance by hacking into Greenpeace's computers and wiretapping its telephones. For purposes of this appeal, only the "D-lines" and physical intrusion and surveillance tactics are relevant.

According to Greenpeace, "D-lines" is BBI terminology referring to the act of acquiring internal documents and records by searching through the dumpsters and recycling bins used by Greenpeace. Between 1998 and May 2000, Greenpeace's office was located at 1436 U Street, Northwest, Washington, D.C. Greenpeace's dumpster was located at ground level, abutting the building. Its recycling bins were located on an elevated loading dock sheltered in the back. Both the trash and recycling bins were on private property. In May 2000, Greenpeace moved its office to 702 H Street, Northwest. This time, the recycling and trash bins were both located inside the building in a locked ground floor room. Greenpeace alleges that, between September 1998 and October 2000, the individual appellees, or their agents,[5] conducted more than 100 D-lines at both Greenpeace's U Street and H Street offices for Dow. Similarly, Greenpeace claims that, between July 13, 1998 and November 12, 1998, the individual appellees, or

---

[5] Greenpeace claims that BBI contracted a Metropolitan Police officer to assist in at least fifty-five D-Lines by using his official police badge to gain access to dumpsters that were enclosed by a locked fence.

their agents, conducted at least thirty-five D-lines for the Lake Charles Project on behalf of Sasol at the U Street office.

Greenpeace further alleges that BBI engaged in surveillance of specific individuals associated with Greenpeace and intruded into its offices. Specifically, it accuses BBI of breaking into its U Street office and stealing documents. Further, it claims that BBI engaged in surveillance of Greenpeace on behalf of Dow. And, on behalf of Sasol, BBI hired "research consultant" Mary Lou Sapone to surveil Greenpeace's U Street office while pretending to be a prospective volunteer. Through BBI's actions, Dow/Ketchum and Sasol/Devenhall gained voluminous amounts of confidential information, including: campaign planning and strategy documents, internal communications, legal communications, financial reports and information, and personal employee information. Greenpeace asserts that both Dow/Ketchum and Sasol/Devenhall were aware of BBI's illegal methods, as evidenced by their substantial monetary payments to BBI, interactions and briefings with BBI, and attempts to limit or obfuscate their involvement with BBI.

Greenpeace claims it was ignorant of appellees' actions when they occurred, and that it learned of the misconduct only years later in April 2008, through an investigative reporter for *Mother Jones* magazine, who obtained the implicating

information from one of BBI's former principals seeking to expose its actions. On November 29, 2010, Greenpeace filed its federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, 18 U.S.C. §§ 1962 (c) and (d) (amended 1988), and supplemental state-law claims in the United States District Court for the District of Columbia. On September 9, 2011, the federal court rejected the RICO claims and dismissed the other claims without prejudice. *See Greenpeace, Inc. v. The Dow Chem. Co.*, 808 F. Supp. 2d 262, 274 (D.D.C. 2011). Following dismissal, Greenpeace filed the instant action in Superior Court on October 7, 2011. The running of the statutory limitations period for its state-law claims tolled while the case was pending in federal court. *See* 28 U.S.C. § 1367 (d) (1990); *Stevens v. ARCO Mgmt. of Wash. D.C., Inc.*, 751 A.2d 995, 1003 (D.C. 2000) (applying § 1367 (d)).

Appellees filed motions to dismiss all counts of the complaint, *see* Super. Ct. Civ. R. 12 (b)(6). At the motion hearing, the trial court, among other things, probed Greenpeace's counsel extensively on the question of what specific injuries Greenpeace is alleged to have suffered as a result of appellees' actions. Specifically, the court questioned whether Greenpeace could claim that its campaigns and ability to work were impacted if Greenpeace did not know of the wrongdoing until the *Mother Jones* article was published. Greenpeace's counsel

was unable to proffer any specific examples of harm to any Greenpeace campaign or mission resulting from appellees' actions.

On February 5, 2013, the trial court issued an order granting appellees' motions to dismiss the claims of trespass to common areas, invasion of privacy, and conversion.[6] Preliminarily, the court determined that both Dow/Ketchum and Sasol/Dezenhall could be held vicariously liable for the individual appellees' actions because the complaint sufficiently pleaded acts amounting to a "plausible" civil conspiracy. The trial court based this determination on the fact that Dow/Ketchum and Sasol/Dezenhall participated in meetings with BBI and received information on their investigatory activities.[7] As to the claim of trespass to common areas (which was based on the D-line allegations), the court found that Greenpeace, as a tenant in an office building (at both the U Street and H Street locations), lacked a possessory interest in the common areas where the trash and recycling bins were located necessary to maintain a suit for trespass. As to

---

[6] See *supra* note 2 for the trial court's full disposition of Greenpeace's claims.

[7] The trial court also tacitly agreed with Greenpeace that the statute of limitations for all of its claims tolled until April 2008, the date when it first became aware of the conduct. Appellees do not appear to challenge this finding on appeal; thus, any such argument is waived. *See Rose v. United States*, 629 A.2d 526, 535 (D.C. 1993) ("It is a basic principle of appellate jurisprudence that points not urged on appeal are deemed to be waived.").

invasion of privacy by intrusion, the court found three independent bases for dismissing the claim: (1) Greenpeace's inability to allege "even one dollar of actual, compensable damages" was fatal to its claim; (2) a corporation does not have a right to privacy under District of Columbia law; and (3) the claim was time barred by a one-year statute of limitations. Lastly, as to Greenpeace's claim of conversion of the information contained in its documents, the court found that there is no cause of action for conversion of "intangible property that is not merged into a transferrable document." This appeal followed.

## II. Discussion

This court reviews *de novo* an appeal from a motion to dismiss a complaint under Rule 12 (b)(6). *See In re Estate of Curseen*, 890 A.2d 191, 193 (D.C. 2006). "Like the trial court, this court accepts all of the allegations in the complaint as true, and must construe all facts and inferences in favor of the plaintiff." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 316 (D.C. 2008). "To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim." *Woods v. District of Columbia*, 63 A.3d 551, 552-53 (D.C. 2013). "However, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Chamberlain v. Am. Honda Fin. Corp.*, 931

A.2d 1018, 1023 (D.C. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration in original). "Furthermore, dismissal under Rule 12 (b)(6) is appropriate where the complaint fails to allege the elements of a legally viable claim." *Id.* (citation omitted); *see also Potomac Dev. Co. v. District of Columbia*, 28 A.3d 531, 543 (D.C. 2011). Greenpeace challenges the trial court's order dismissing its claims for: (1) trespass to common areas, (2) invasion of privacy, and (3) conversion. We address each claim in turn.

### A. Trespass to Common Areas

Greenpeace contends that the trial court erred in finding that, as a tenant in an office building, it could not successfully maintain a claim of trespass to common areas — specifically, the areas of the building where the trash and recycling bins were located. The tort of trespass is defined as "an unauthorized entry onto property that results in interference with the property owner's *possessory interest* therein." *Sarete, Inc. v. 1344 U St. Ltd. P'ship*, 871 A.2d 480, 490 (D.C. 2005) (emphasis added) (citation and internal quotation marks omitted).[8]

---

[8] Of course, it is well settled that a tenant, while not a property owner, but rather "a purchaser of an estate" and "entitled to exclusive legal possession" of the leased property, can maintain a claim of trespass with respect to the premises for

(continued . . .)

Consequently, a recognized possessory interest is the "key requirement" for a successful claim of trespass. *See Gaetan*, *supra* note 8, 729 A.2d at 898 (citation omitted). A "possessory interest" is defined as "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner." Black's Law Dictionary 1203 (8th ed. 2004); *see also Fortune v. United States*, 570 A.2d 809, 811 (D.C. 1990). Thus, to maintain its claim of trespass to common areas, Greenpeace must demonstrate that it has a recognized *possessory* interest in the trash and recycling areas of its office buildings, meaning the ability to control and exclude others from using those areas. Greenpeace cannot make this showing. Greenpeace cannot demonstrate "exclusive" control of the trash and recycling areas because it concedes that those areas were for all tenants' *common* use. Thus, Greenpeace could not exclude other tenants from accessing the trash and recycling area, nor could it be excluded by the other tenants. Without such a possessory right, as a matter of law, Greenpeace cannot maintain a suit for trespass to these common areas.

Contrary to Greenpeace's claim, the mere fact that a tenant may have the "authority" to permit access into the common areas does not confer onto the tenant

---

(. . . continued)
which it has a lease. *Young v. District of Columbia*, 752 A.2d 138, 144 (D.C. 2000); *see also Gaetan v. Weber*, 729 A.2d 895, 898 (D.C. 1999).

a legally recognized possessory interest in those areas. *See, e.g.*, *Young*, *supra* note 8, 752 A.2d at 144 (distinguishing a legally recognized possessory interest from the right to "merely" use the premises). Greenpeace relies on *City of Seattle v. McCready*, 877 P.2d 686, 690 (Wash. 1994) (en banc), in which the Supreme Court of Washington, considering the legality of Seattle's Residential Housing Inspection Program (designed to "assure the fitness of residential tenancies"), concluded that tenants possessed the "authority" to consent to a search of an apartment building's common areas. *Id.* (stating in that context that "landlords do not have exclusive authority over the common areas"). The court reasoned that "[i]n order to admit visitors to an apartment, the tenant must necessarily possess the authority to permit guests to pass through the common areas leading to that apartment." *Id*. Nothing in the opinion addresses whether that authority confers on the tenant a possessory interest with respect to (i.e., the authority to exclude others from) the common areas. For purposes of our analysis, we find more persuasive the opinion in *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158, 165-66 (Ind. Ct. App. 2005). There, the Court of Appeals of Indiana agreed with the *McCready* court that "tenants must have the right to permit visitors to pass through the common areas in order to enter their apartment," but concluded that to confer onto tenants a possessory right based on this authorization would cause an absurd result because "[i]f neither the landlord nor the tenant has

exclusive control over common areas then no one would be able to maintain an action for trespass to those areas." *Id.* at 165. Consequently, the court held that landlords retain exclusive possession of common areas. *Id.; see also Stanley v. Town Square Coop.,* 512 N.W.2d 51, 54 (Mich. Ct. App. 1994). We agree with the *Aberdeen Apartments* court's reasoning, and also note that to hold otherwise would be patently unfair because the landlord, and not the tenant, bears the burden of maintaining the common areas. *See Graham*, *supra* note 8, 424 A.2d at 105. Accordingly, Greenpeace cannot maintain its suit for trespass to common areas.

### B. Invasion of Privacy

Greenpeace next challenges the trial court's dismissal of its claim of invasion of privacy by intrusion based on appellees' alleged actions in trailing activists, infiltrating its offices with undercover agents, and riffling through its trash and recycling. Specifically, Greenpeace contends that: (1) the trial court should have applied a three-year statute of limitations to its claim, rather than a one-year statute of limitations; (2) a corporation has a "cognizable privacy interest" sufficient to maintain an invasion of privacy claim; and (3) the complaint pleaded sufficient facts establishing injury. We affirm because the intrusion claim is time-

barred by a one-year statute of limitations, and thus we need not address Greenpeace's other two arguments.

"Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Wolf v. Regardie*, 553 A.2d 1213, 1216-17 (D.C. 1989). The four constituent torts are: "(1) intrusion upon one's solitude or seclusion ["intrusion"]; (2) public disclosure of private facts ["public disclosure"]; (3) publicity that places one in a false light in the public eye ["false light"]; and (4) appropriating one's name or likeness for another's benefit ["appropriation"]. *Id.* at 1217 (citing *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 587 (D.C. 1985)). Greenpeace's appeal is focused solely on "intrusion." "Unlike some other types of invasion of privacy, intrusion does not require as an essential element the publication of the information obtained." *Id.* (citing Restatement (Second) of Torts § 652B cmt. a (1977)).

While it appears that no cases from this jurisdiction have explicitly decided what statute of limitations to impose on invasion of privacy claims, the District of Columbia Circuit, in *Mittleman v. United States*, 322 U.S. App. D.C. 367, 372, 104 F.3d 410, 415 (1997), concluded that invasion of privacy (false light) and defamation should be subject to the same one year statute of limitations under

District of Columbia law because both claims protect the same interests, namely, the reputation and personal psyche of the plaintiff. The federal court has consistently applied the one year statute of limitations to invasion of privacy claims arising out of District of Columbia law. *See Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 10 (D.D.C. 2008) (concluding that the "one-year statute of limitations under D.C. Code § 12-301 (4) [(2009 Supp.)] . . . applies to *any* invasion of privacy claims") (emphasis added); *Doe v. Southeastern Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990); *see generally Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001); *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1074-75 (D.D.C. 1995).

Greenpeace does not actually dispute that the three constituent invasion of privacy torts of public disclosure, false light, and appropriation are subject to a one-year statute of limitations. Rather, it claims that "intrusion" should be treated differently from the other three and be subject to a three-year statute of limitations, pursuant to D.C. Code § 12-301 (2), (3), and (8), because intrusion does not require the key element of "publication" that makes those other torts analogous to defamation. Intrusion, contends Greenpeace, is more akin to a claim of trespass, which is "a tort involving injury to property," and therefore should be governed by a three-year statute of limitations. We disagree and hold that Greenpeace's

intrusion claim, along with other invasion of privacy claims, is subject to the one-year statute of limitations applicable "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment."  D.C. Code § 12-301 (4).

First, contrary to Greenpeace's contention, the tort of intrusion is broad and is not necessarily limited to an action involving injury to property.

> The tort of intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some form of investigation or examination . . . (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns . . . (3) that would be highly offensive to an ordinary, reasonable person.

*Wolf*, *supra*, 553 A.2d at 1217 (citations omitted).  For example, in *Wolf*, the court identified harassment, peeping through windows where a plaintiff has secluded himself, eavesdropping on private conversations, or examining a plaintiff's private bank account as types of intrusion.  *Id.* at 1217-18.  Moreover, the court recognized that, although there are differences between each of the four permutations of invasion of privacy, the four torts also share many of the same elements, and "each involves interference with the interest of the individual in leading  . . . a secluded and private life[.]"  *Id.* at 1217 n.5 (alteration in original) (citation and internal quotation marks omitted).  Second, having a different statute of limitations for torts

all categorized under "invasion of privacy" would be confusing and would frustrate judicial efficiency. Although the term "invasion of privacy" covers four different torts, in many instances, various theories of invasion of privacy are combined in one case. *See Pearson v. Dodd*, 133 U.S. App. D.C. 279, 283-84, 410 F.2d 701, 705-06 (1969). For these reasons, we decline to hold that intrusion should be subject to a three-year statute of limitations, in contrast to the other three invasion of privacy torts, and hold that Greenpeace's invasion of privacy by intrusion claim is time-barred by the one-year statute of limitations.

### C. Conversion

Lastly, Greenpeace argues that the trial court erred in dismissing its claim for conversion, premised on the various documents that appellees allegedly took from Greenpeace's trash and recycling containers. Greenpeace contends that this court should recognize a claim of conversion of intangible property, based on the "confidential" information contained within the documents taken from its trash and recycling by BBI. However, Greenpeace's conversion claim fails as a matter of law on the independent basis that it has no recognized property interest in anything that it purposefully threw away or abandoned. Conversion is "an *unlawful* exercise of ownership, dominion, and control over the personalty of another in denial or

repudiation of *his right to such property*." *See Wash. Gas Light Co. v. Pub. Serv. Comm'n*, 61 A.3d 662, 675 (D.C. 2013) (emphasis added) (citation omitted). By its very definition, a conversion claim cannot lie in "items lost or left behind" or thrown away. *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155-56 (D.C. 2011). "[A] conversion claim cannot be grounded on abandoned property," since the abandoning party can no longer assert a right to the property over which he or she intentionally relinquished control. *Id.*; *Block v. Fisher*, 103 A.2d 575, 576 (D.C. 1954) ("Abandonment of personal property is a complete defense to an action for conversion." (citation omitted)).

In determining whether a party retains any recognized interest in "private" information that is thrown away, our decision in *Danai v. Canal Square Assocs.*, 862 A.2d 395, 398 (D.C. 2004), is instructive. In *Danai*, appellant Danai filed suit against her commercial landlord for rummaging through her trash and taking a letter from it. *Id.* at 397-98. On appeal, Danai principally argued that she maintained an expectation of privacy in the contents of the letter that had been placed in the building's collective trash room. *Id.* at 399-400. We disagreed, observing that "[t]he vast majority of courts have ruled that . . . the individual who placed [the] garbage [or trash] for collection either abandoned it or has no reasonable expectation of privacy therein, thus rendering any search and seizure of

that trash lawful." *Id.* at 402 (brackets and alterations in original) (citation and internal quotation marks omitted)). Consequently, we held that Danai "both abandoned and relinquished control over the discarded letter" by allowing "her trash to be collected and placed in a locked community trash room over which she has no control." *Id.* We also explicitly noted that, while "Danai may have desired to keep her personal communications secret and private, hers was a failed attempt." *Id*. at 403 (citation and internal quotation marks omitted).

Similarly, Greenpeace's actions in placing its "confidential" information in the trash and recycling, located either outside the building (U Street Office) or in a locked communal trash room (H Street Office), constituted abandonment of both the physical documents and its contents. The fact that Greenpeace placed the documents in private trash and recycling containers is irrelevant because there is nothing in the record to suggest that Greenpeace still sought to exert any control over these items or that this was a "special arrangement" intended to make the garbage "inviolate." *Id.* ("[A]bsent proof that a person has made some special arrangement for the disposition of [her] garbage inviolate, [she] has no reasonable expectation of privacy with respect to it once [she] has placed it for collection." (alteration in original) (citation and internal quotation marks omitted)). Greenpeace admitted that it shared the trash and recycling with other tenants, and

that the trash was routinely picked up by a private contractor to be disposed of, thus evidencing that Greenpeace relinquished control and abandoned any legal interest it had over the documents and information placed in the trash. Accordingly, because Greenpeace abandoned the information, its claim of conversion fails as a matter of law.

To be sure, a distinction might be drawn between abandonment of the physical piece of paper and abandonment of the intangible property set forth in that paper. But we are addressing here the tort of conversion. As applied to intangible property, our jurisprudence has sharply limited the possible availability of that tort to types of documents of intrinsic value not presented here. *See Pearson*, *supra*, 133 U.S. App. D.C. at 284, 410 F.2d at 706; *see also Kaempe v. Myers*, 361 U.S. App. D.C. 335, 341, 367 F.3d 958, 964 (2004) ("Where there has been no dispossession of *property rights*, there can be no action for conversion." (emphasis added)). Conversion is a tort based on the theory that the defendant "has in some way treated the goods as if they were his own, so that the plaintiff can properly ask the court to decree a forced sale of the property." *Pearson*, *supra*, 133 U.S. App. D.C. at 284, 410 F.2d at 706. Whatever other protections the law may offer to protect intangible property rights, the common-law tort of conversion is generally ill-suited to that end.

### III. Conclusion

Whatever view may be taken of the allegations made by Greenpeace, the common law torts alleged by Greenpeace are simply ill-suited as potential remedies. Accordingly, for the reasons stated above, the trial court's order dismissing Greenpeace's complaint is

*Affirmed.*