# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 19, 2020        Decided July 17, 2020

No. 18-7168

IMAPIZZA, LLC,
*APPELLANT*

v.

AT PIZZA LIMITED, ET AL.,
*APPELLEES*

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-02327)

*David Barmak* argued the cause for appellant. With him on the briefs was *Andrew D. Skale*.

*Matthew J. Dowd* argued the cause and filed the brief for appellees.

Before: ROGERS and TATEL, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* Ginsburg.

GINSBURG, *Senior Circuit Judge*: IMAPizza, which operates the "&pizza" chain of restaurants in the United States,

has brought this suit under the Copyright and Lanham Acts as well as D.C. common law against At Pizza, operator of the "@pizza" restaurant in Edinburgh, Scotland. IMAPizza alleges At Pizza's restaurant is an unauthorized copycat version of its "&pizza" stores. Because At Pizza operates only in the United Kingdom, IMAPizza's claims test the limits of the extraterritorial application of the Copyright and Lanham Acts. The district court dismissed these and IMAPizza's other claims. For the reasons below, we affirm the judgment of the district court.

I.

We take the facts as IMAPizza describes them. Its &pizza restaurant chain is "renowned for its creative pies and craft beverages, localized shop design, and its strength, unity and vibe." There are several &pizza locations along the East Coast of the United States, and the company is pursuing expansion into the U.K. At Pizza, the U.K. corporation operating the @pizza restaurant in Edinburgh, is owned by Rupert Lyle and Bhasker Dhir, both citizens of the U.K.[1] After touring some &pizza restaurants in Washington, D.C., Lyle decided to copy them. Upon returning to the U.K., he incorporated "& Pizza Limited," and soon thereafter renamed the business At Pizza. At Lyle's behest, Dhir then visited &pizza locations in the U.S. in order to learn about and copy the restaurants' appearance and operations. Lyle and Dhir took pictures of &pizza restaurants in the U.S. and downloaded copyrighted pictures of &pizza restaurants from websites operating on U.S. servers. They used the photos and information they had gathered to market and create in Edinburgh a copycat version of the &pizza restaurants they had seen in the U.S.

---

[1] For simplicity we refer to At Pizza throughout, but note that IMAPizza included Dhir and Lyle in all their claims.

IMAPizza filed this suit against At Pizza for infringement under the Copyright Act, for trademark infringement and unfair competition under the Lanham Act, and for trespass under the common law of the District of Columbia, along with a claim of "passing off" under U.K. common law.

The defendants moved under Federal Rule of Civil Procedure 12(b)(2) and (6) to dismiss the case for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. With respect to Rule 12(b)(2), the district court held IMAPizza had just "eked out a *prima facie* showing of personal jurisdiction," but noted that, should the case proceed, At Pizza "may ultimately be able to show that jurisdiction is unreasonable."

As to Rule 12(b)(6), the district court held IMAPizza's Copyright and Lanham Act claims failed because the pertinent facts arose beyond the territorial reach of those Acts. More specifically, the district court held IMAPizza failed to allege a domestic violation of its copyrights, as required by the Copyright Act, and IMAPizza's Lanham Act claims fell beyond the extraterritorial limits of that law. Regarding the trespass claim under D.C. law, the district court held IMAPizza failed to allege facts showing that Lyle or Dhir exceeded the consent granted visitors of &pizza restaurants. Because IMAPizza failed to allege sufficient facts to support the court's diversity jurisdiction (namely the citizenship of the members of the IMAPizza LLC) even after the district court ordered it to submit evidence, the district court dismissed IMAPizza's passing off claim under U.K. law for lack of subject matter jurisdiction. The court declined to exercise supplemental jurisdiction as "considerations of comity weighed heavily against issuing injunctive relief, based solely on another country's laws, to restrain business conduct taking place in that country." Nonetheless, IMAPizza now asks this court, in the

event any of its other claims are remanded, to revive its passing off claim under supplemental jurisdiction. For the reasons set out below, we affirm the judgment of the district court dismissing all of IMAPizza's claims.

## II.

The court reviews *de novo* the dismissal of a complaint for failure to state a claim. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1128 (D.C. Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Leave to Amend

Before we turn to the substance of IMAPizza's claims, we address its challenge to what it describes as the district court's decision not to grant it leave to amend its complaint. Under Rule 15, leave to amend a complaint is to "be freely given when justice so requires." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting FED. R. CIV. P. 15(a)). We review for abuse of discretion a district court's decision not to grant leave to amend. *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006).

Under Local Rules 7 and 15.1 of the district court, IMAPizza was required to file a motion for leave to amend and provide a copy of its proposed amended complaint. LCvR 7(a), (i), 15.1; *Belizan*, 434 F.3d at 582. IMAPizza argues that it did so in its Memorandum in Opposition to the Defendants' Motion to Dismiss, in which IMAPizza stated that "were the Court inclined to grant the Rule 12(b)(6) challenge in any respect, it should be with leave to amend." As we have held

before, such an informal request does not satisfy the requirements of Local Rules 7 or 15. *Belizan*, 434 F.3d at 582–83. Though made in writing, IMAPizza's request was not a motion, and a copy of the proposed amended complaint was not attached to it. LCvR 7(a), (i), 15.1. There was no abuse of discretion since the plaintiff's failure to follow the rules denied the district court a proper opportunity to exercise its discretion.

In its reply brief in this court, IMAPizza attempts to elide its failure to request leave to amend by arguing the district court should not have dismissed its complaint with prejudice. IMAPizza forfeited this argument by failing to make it in its opening brief. *See In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006). Therefore, we take IMAPizza's complaint as it was filed and considered by the district court.

B. Copyright Act

IMAPizza claims At Pizza infringed its "exclusive rights" to its photographs and its architectural and interior design plans by making unauthorized copies of three copyrighted pictures of &pizza restaurants and taking pictures of &pizza restaurants. 17 U.S.C. § 106. "To establish copyright infringement," IMAPizza "must prove '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)) (cleaned up). The Copyright Act, like most laws, "governs domestically but does not rule the world." *RJR Nabisco Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016); *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 913 (D.C. Cir. 2018) (recognizing "the Copyright Act has no extraterritorial application").

This court recently considered the limits to extraterritorial application of the Copyright Act in *Spanski v. Telewizja Polska*, concluding that even when conduct crosses international borders, there is a "permissible domestic application" of the Copyright Act if "conduct relevant to the statute's focus occurred in the United States." 883 F.3d at 913 (quoting *RJR Nabisco*, 136 S. Ct. at 2101). The focus of the Copyright Act, we said, was upon "policing infringement or, put another way, on protecting the exclusivity of the rights it guarantees." *Id*. at 914. Therefore, although the transmission of the copyrighted television show originated in Poland, the Act applied to its performances on television screens in the U.S. *Id.* As in *Spanski*, the question in this case is not simply whether At Pizza infringed IMAPizza's "exclusive rights" under the Copyright Act but whether IMAPizza has adequately alleged At Pizza did so in the U.S. *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008) (holding the domestic location of an act of infringement is "an element of the claim which must be proven before relief can be granted").

The parties agree the applicability of the Copyright Act depends upon whether IMAPizza has alleged an act of "domestic infringement." Of course, they disagree as to whether IMAPizza has done so. IMAPizza says it alleged two infringing acts in the United States: (1) downloading its copyrighted pictures of &pizza restaurants from websites operating on servers located in the U.S., and (2) taking pictures of &pizza restaurants in the U.S.

IMAPizza argues that downloading of copyrighted pictures from servers in the U.S. is an act of domestic infringement "regardless of where the receiving computer is located." The district court agreed that the unauthorized downloading of pictures from a website could infringe IMAPizza's exclusive right to reproduce the pictures under

§ 106(1) of the Act but, given At Pizza's location in the U.K., held IMAPizza's allegation that At Pizza downloaded those pictures from servers located in the U.S. was insufficient to establish a domestic infringement.

As the alleged infringement under § 106(1) of the Copyright Act is the reproduction of a picture, we determine where the infringement occurred by looking to where the copy was made. The Copyright Act defines "copies" as "material objects . . . in which a work is fixed" and considers a work "'fixed' in a tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. We agree with the district court that this definition of copy does not include "ephemeral transmission of a picture across the internet." Instead, the copy becomes "fixed" when the picture is reproduced for a viewer. IMAPizza, however, failed plausibly to allege that any such reproduction occurred in the United States.

In *Spanski* we applied the Copyright Act to the transmission of television shows over the internet from Poland because it resulted in performances on computer screens in the U.S., acts of domestic infringement under § 106(4). 883 F.3d at 914. As the focus of the Copyright Act is the protection against infringing performances, and the infringing performances occurred on screens in the U.S., the court determined "the conduct relevant to the statute's focus occurred in the United States" and therefore provided the basis for "a permissible domestic application" of the Act. *Id.*

This is in accord with the district court's decision that, in view of At Pizza's being located in the U.K., IMAPizza's allegations were insufficient to "support a plausible inference

of domestic infringement."  The district court reasoned that a "'copy' is made where the receiving computer assembles the transmitted information into a complete image that can be 'perceived.'" *Cf. Columbia Pictures Indus., Inc. v. Fung*, No. 06-cv-5578 (SVW) (JCx), 2009 WL 6355911, at *8 (C.D. Cal. Dec. 21, 2009), *aff'd in part, vacated in part on other grounds, and modified in part*, 710 F.3d 1020 (9th Cir. 2013).  IMAPizza argues the *Columbia Pictures* decision would support application of the Copyright Act if either the sender or the recipient of the copy is located in the U.S.  At Pizza responds, and we agree, that IMAPizza misreads *Columbia Pictures*; the court in that case simply recognized a transmission involves two potentially infringing acts, the unauthorized uploading and the unauthorized downloading of a file, either one of which could create a copy that would constitute a domestic act of infringement — but only if completed in the U.S.  *Id.*  As IMAPizza did not allege the upload of the pictures was unauthorized, and failed to allege the pictures were downloaded in the U.S., it has not alleged a domestic act of infringement.

IMAPizza asserts the U.S. servers from which the download occurred are "where the copying took place."  It provides no technical, legal, or other support, however, for the proposition that downloading a picture from a server located in the U.S. creates a copy of that picture in the U.S. in addition to the copy where the receiving device is located.[2]

---

[2] In support of applying the Copyright Act to a transmission from the U.S. to a receiving computer outside the U.S., IMAPizza cites three district court cases, no one of which supports its assertion.  In *Liberty Media Holdings, LLC v. Vinigay.com*, the court found an application of the Copyright Act was not "wholly extraterritorial" when video files downloaded from U.S. servers were then uploaded to servers in an unknown location "for display, distribution, and copying by Internet users *in the United States* . . . ."  No. 11-cv-280 (PHx)

IMAPizza also argues the taking of pictures in its U.S. restaurants were acts of domestic infringement as part of a scheme to create a copycat restaurant, but that argument fails because the Copyright Act does not create a right to prevent the taking of pictures of an architectural work "if the building in which the work is embodied is located in or ordinarily visible from a public place." 17 U.S.C. § 120(a). Nonetheless, IMAPizza complains that the taking of pictures in its U.S. restaurants "culminated with the opening of an infringing restaurant in Scotland," but even IMAPizza must recognize it has alleged an act of potential infringement that culminated where the infringing building was constructed, that is, in the U.K., not in the U.S.

IMAPizza next argues that, even if the download of copyrighted pictures from servers located in the U.S. or photographing restaurants in the U.S. are not complete acts of domestic infringement, the Copyright Act may still be applied if "essential steps" to that end occurred in the U.S., namely (1)

---

(LOA), 2011 WL 7430062, at *5 (D. Ariz. Dec. 28, 2011), *report and recommendation adopted*, 2012 WL 641579 (D. Ariz. Feb. 28, 2012) (emphasis added). The court did not, as IMAPizza suggests we do here, rely solely upon the location of the servers from which the videos were initially downloaded. In *Elsevier Ltd. v. Chitika, Inc.*, the court held the allegation that a person *in the U.S.* downloaded infringing copies from a website in India adequately pled an act of infringement in the U.S. 826 F. Supp. 2d 398, 402–03 (D. Mass. 2011). Finally, *Synopsys Inc. v. Ubiquiti Networks, Inc.* involved allegations of criminal copyright infringement and violations of the Digital Millennium Copyright Act based upon Ubiquiti's unauthorized reproduction of copyrighted files across "communications networks, file repositories, email servers, IP addresses, and website domains hosted *in the United States*" and his importation of counterfeit access keys from Taiwan that were used on computers based *in the U.S.* No. 17-cv-00561-WHO, 2017 WL 3485881 at *3–8 (N.D. Cal. Aug. 15, 2017) (emphasis added).

downloading of pictures from U.S. servers and (2) taking of pictures in U.S. restaurants. Here IMAPizza conflates the "predicate act" test applied by the Second, Fourth, and Ninth Circuits with its own novel "partial-act" theory.

Under the predicate act test, a court may apply the Copyright Act to foreign acts of infringement provided there was an initial infringing act in the U.S. *See, e.g.*, *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306–08 (4th Cir. 2012) (applying the Copyright Act to foreign conduct stemming from the creation of an infringing copy made in the U.S.). As the district court observed, the predicate act test originated with Judge Learned Hand's decision in *Sheldon v. Metro-Goldwyn Pictures Corp.*, which awarded damages for overseas performances of a motion picture, because the unauthorized copying of the negatives that made those foreign performances possible was done in the United States. 106 F.2d 45, 52 (2d Cir. 1939).

As the district court correctly said, and At Pizza echoes, the predicate act test "adds nothing to IMAPizza's case absent an allegation that an act of infringement occurred in the United States." IMAPizza has failed to make that allegation. Its allegations concerning pictures downloaded from U.S. servers and pictures taken in U.S. restaurants do not implicate the Copyright Act — even under the predicate act test. *See Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (holding the Copyright Act inapplicable where satellite television signals were broadcast from the U.S. into Canada because potential infringement was not complete until the signals were received in Canada); *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1100 (2d Cir. 1976) (holding the Copyright Act inapplicable for want of an infringement in the U.S. where "the defendants assembled and arranged in the United States all the necessary elements for the

performances in Canada, and then simply travelled to Canada to complete the performances").

Lastly, IMAPizza warns that if it loses this case, then "an illegal video download company could purchase legitimate copies of all U.S. movies, and distribute them to the entire world (other than the U.S.) from a U.S. server without any liability under U.S. copyright law, with the U.S. movie company powerless to pursue complete relief unless it did so under the copyright laws of the 194 countries in the world *other* than the U.S."  Not so: The unauthorized upload of a video to a server in the U.S. for unauthorized distribution abroad would be an act of infringement in the U.S.  *See Columbia Pictures*, 2009 WL 6355911, at *8 (recognizing unauthorized uploading in the United States as a domestic infringement); *cf. Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 991–92 (9th Cir. 1998) (recognizing copies made in the U.S. to enable transmission abroad as acts of infringement in the U.S.).  Notably, IMAPizza made no allegations of uploading in the U.S.

In sum, IMAPizza failed to state a claim under the Copyright Act because it did not allege an act of copyright infringement in the United States.  We decline, as have other courts, to extend the Copyright Act beyond its territorial limits lest U.S. law be used to sanction what might be lawful conduct in another country.  *See, e.g.*, *Subafilms Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1097 (9th Cir. 1994) (discussing the international discord that could result from extraterritorial application of U.S. copyright law).

C.  Lanham Act

IMAPizza's allegations of trademark infringement and unfair competition under the Lanham Act are based upon the

similarities between IMAPizza's trademarks "and other features of its business" and At Pizza's marketing materials and restaurant in Edinburgh. The Lanham Act protects trademarks against their "use in commerce . . . likely to cause confusion," and reaches "all commerce which may lawfully be regulated by Congress." 15 U.S.C. §§ 1114(1)(a), 1127.

Whether a statute applies extraterritorially is determined per the framework most recently explicated by the Supreme Court in *RJR Nabisco*: The first question is "whether the statute gives a clear, affirmative indication that it applies extraterritorially"; if it does, then that is the end of the matter. 136 S. Ct. at 2101. In *Morrison v. National Australia Bank Ltd.*, the Supreme Court reiterated that its opinion in *Steele v. Bulova Watch Co.*, "interpret[ed] . . . the Lanham Act to have extraterritorial effect," 561 U.S. 247, 271 n.11 (2010) (citing 344 U.S. 280 (1952)), and so it is to *Steele* we look to determine whether the Lanham Act applies to particular conduct abroad.

*Steele* involved a U.S. citizen who bought components of watches in the U.S. and assembled and sold them as Bulova watches in Mexico. *Steele*, 344 U.S. at 286–87. The Court observed that "spurious 'Bulovas' filtered through the Mexican border" into the U.S. and "could well reflect adversely" upon Bulova's reputation in the U.S. *Id*. at 286. Thus, although the watches were made and sold in Mexico, the defendant's conduct "brought about forbidden results within the United States." *Id.* at 288 (citation omitted).

Though this court has not had an occasion to decide the proper test for applying the Lanham Act to conduct abroad, our sister circuits have embraced multiple tests for applying *Steele v. Bulova Watch*. IMAPizza insists we should adopt the Ninth Circuit's test, which provides that the conduct must have "some effect" on U.S. commerce, *see Trader Joe's Co. v. Hallatt*, 835

F.3d 960, 969 (9th Cir. 2016), while At Pizza urges us to apply the First Circuit's more stringent requirement that conduct by a foreign defendant must have "a *substantial effect* on United States commerce," *McBee v. Delica Co., Ltd.*, 417 F.3d 107, 120 (1st Cir. 2005) (emphasis added). We need not resolve the proper test today because, even applying the Ninth Circuit's looser "some effects" test, the facts of this case do not plausibly involve an effect on U.S. commerce sufficient to state a claim. The district court helpfully contrasted the facts in *Steele* with those alleged here, noting the defendants here are foreign citizens; their business, which is "quintessentially local," operates solely in the U.K.; they neither purchased supplies from nor made sales to the U.S.; and neither their products nor their advertisements are alleged to have "filtered through" to the U.S.

IMAPizza argues nonetheless the At Pizza restaurant in Scotland has had an effect on U.S. commerce principally because (1) some of the U.S. students and U.S. tourists who visit Edinburgh and purchase food there may be familiar with the &pizza restaurants in the U.S., (2) a potential investor confused At Pizza with &pizza, and (3) At Pizza visited the U.S. to further its scheme of copying the &pizza restaurants.

First, to apply the Lanham Act based upon U.S. students and tourists buying food while in Edinburgh would, as the district court said and At Pizza argues, "extend [the Act] to all commercial conduct occurring anywhere in the world that American tourists visit in significant numbers." In any event, IMAPizza nowhere alleged that a bad experience in Scotland will cause it to lose customers in the U.S. Therefore, even if some U.S. consumers in Edinburgh are confused about what IMAPizza calls an "affiliation" between the restaurants, IMAPizza has not explained how their confusion will affect

pizza purchases in U.S. commerce sufficiently to state a Lanham Act claim.

Second, although a potential business partner of At Pizza was allegedly confused by an At Pizza marketing presentation, as the district court observed, IMAPizza does not allege this confusion caused it any harm. It is not possible, therefore, to say this single instance of confusion had any effect upon U.S. commerce.

Finally, IMAPizza points to its allegations regarding the number and nature of the defendants' visits to the U.S. to research &pizza restaurants. Those visits do not establish the domestic reputational harm to U.S. firms deemed sufficient to apply the Lanham Act extraterritorially in *Steele*, 344 U.S. at 285, and *Trader Joe's*, 835 F.3d at 971–72. Indeed, applying the Lanham Act based upon those visits to restaurants in the U.S., like applying the Act based upon the visits of American students and tourists to a restaurant in Edinburgh, would expand the reach of the Lanham Act worldwide without the requisite demonstrated effect on U.S. commerce.[3]

---

[3] IMAPizza cites several district court cases that it incorrectly argues support application of the Lanham Act based upon the facts it has alleged. *MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com*, No. 2:14-cv-1613 (GMN) (VCF), 2015 WL 5674374 (D. Nev. July 8, 2015), *report and recommendation adopted*, 2015 WL 5682783 (D. Nev. Sept. 23, 2015); *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 951–52 (S.D.N.Y. 1994); and *Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc.*, No. 6:14-CV-1551-ORL, 2015 WL 1708757 at *11–12 (M.D. Fla. Apr. 15, 2015). All involved allegations of lost sales and other effects on U.S. commerce. IMAPizza has not alleged that @pizza sales of pizzas in Edinburgh, Scotland will cause lost sales at its restaurants in the U.S.

In sum, with no need to commit this Circuit to one standard or another, we hold IMAPizza failed to state a claim under the Lanham Act because it failed to allege some plausible effect — let alone a significant or substantial effect — upon U.S. commerce.

D.  Trespass

In the common law of the District of Columbia, trespass is defined as "an unauthorized entry onto property that results in interference with the property owner's possessory interest therein." *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1060 (D.C. 2014) (emphasis omitted) (citation omitted). IMAPizza alleges At Pizza's entries into its restaurants were unauthorized because they were for the purpose of observing and taking pictures in furtherance of At Pizza's scheme to copy &pizza restaurants.  At Pizza argues its entries were not unauthorized because &pizza restaurants are open to the public, and IMAPizza's allegations are insufficient because "supported by mere conclusory statements."

The district court, lacking binding authority from the District of Columbia Court of Appeals, looked — as D.C. courts have done in the past — to the Second Restatement of Torts and persuasive precedents of other jurisdictions in order to predict how the Court of Appeals would decide the issue. *See, e.g.*, *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1266 (D.C. 2015) (referencing the Second Restatement of Torts regarding a tort for invasion of privacy); *Lacy v. Sutton Place Condo. Ass'n, Inc.*, 684 A.2d 390, 394 (D.C. 1996).  In doing so, the district court agreed with At Pizza that "IMAPizza cannot invite the public in, and then rely on its unexpressed preferences to single out Defendants as trespassers after the fact."

Of course, it is black letter law that "one who effectively consents to conduct of another . . . cannot recover in an action of tort for the conduct or for harm resulting from it." Restatement (Second) of Torts § 892A(1) (1979). IMAPizza, while acknowledging that its restaurants invite the public in, argues its consent to enter was "extinguished" with respect to At Pizza because it was obtained through "misrepresentation, fraud, or mistake" or because the restaurants were accessed for "tortious acts," namely "stealing &pizza's intellectual property." Here IMAPizza looks to two federal cases applying District of Columbia common law for the proposition that "consent given upon fraudulent misrepresentation will not always defeat a claim for trespass." *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 118–19 (D.D.C. 2018) (quoting *Counsel on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 345 (D.D.C. 2011)). As At Pizza points out, however, in both those cases the court refused to dismiss claims of trespass against former interns who, based upon fraudulent internship applications, had gained access to non-public office areas and materials. The defendants here are not alleged to have accessed non-public areas of the restaurants or violated any condition IMAPizza set upon access to public areas of its restaurants. IMAPizza does not allege, for example, that it prevents customers from taking photos in its restaurants.

The plaintiff, the defendants, and the district court all looked to Judge Posner's opinion in *Desnick v. American Broadcasting Cos., Inc.* for the principle that even fraudulently obtained consent may invalidate a claim of trespass unless the tortfeasor invaded "specific interests that the tort of trespass seeks to protect," namely "ownership or possession of land." 44 F.3d 1345, 1352–53 (7th Cir. 1995). If a party could successfully recover for trespass based upon misrepresentation alone, Judge Posner observed, "a restaurant critic could not

conceal his identity when he ordered a meal." *Id.* at 1351. On the other hand, IMAPizza points out, Judge Posner instances a competitor who poses as a customer to steal trade secrets as an example of trespass despite apparent consent. IMAPizza's allegation is not sufficient to make out a trespass analogous to Judge Posner's hypothetical because it failed to allege the defendants accessed non-public areas of &pizza restaurants or observed any intellectual property that was not visible to the public during its visits. Therefore, IMAPizza's trespass claim fails for want of any unauthorized entry into its restaurants.

E. Denial of Surreply

Lastly, IMAPizza offers up a perfunctory discussion of the allegedly new issues as to which the district court denied it leave to file a surreply, but fails to show the district court abused its discretion. As At Pizza points out, IMAPizza's initial brief in this court did not even explain why it claimed the district court erred. Rather than substantively rebut the district court's holding that a surreply on those issues was not necessary, it merely identified the arguments for which its request was denied.

IMAPizza also contends the district court abused its discretion in declining to exercise supplemental jurisdiction over the U.K. "passing off" claim. IMAPizza makes this claim on appeal despite having failed to satisfy the district court's reasonable efforts to ensure the court had subject matter jurisdiction. It was only after IMAPizza had failed twice to substantiate its allegation of diversity jurisdiction that the district court dismissed IMAPizza's claim for lack of subject matter jurisdiction. Declining to exercise supplemental jurisdiction over this remaining claim, particularly after giving IMAPizza multiple opportunities to demonstrate jurisdiction, was not an abuse of discretion.

### III.

We are not blind to the difficulty IMAPizza may encounter in trying to enter the U.K. market now that At Pizza has established a copycat restaurant there. If IMAPizza had made allegations showing At Pizza's conduct affects U.S. commerce, it is quite possible IMAPizza would be able to obtain relief under the Lanham Act. On the facts as alleged, however, it cannot do so. For the foregoing reasons, the judgment of the district court is

*Affirmed.*